UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE

| | |
|---|---|
| Tri-Cities Holdings LLC, et al. | |
| Plaintiffs, | |
| | Case No. 3:14-cv-01197 |
| v. | |
| | **JUDGE CAMPBELL** |
| Tennessee Administrative Procedures Division, et al. | **MAGISTRATE JUDGE GRIFFIN** |
| Defendants. | |

### DECLARATION OF JAMES A. DUNLAP JR.

I, James A Dunlap Jr., do declare under penalty of perjury and if called as a witness would testify as follows:

1. Plaintiff Tri-Cities Holdings LLC's ("TCH") appeal of the Tennessee Health Services and Development Agency's ("HSDA") denial of its application for a Certificate of Need ("CON") was referred to the Tennessee Department of State ("DOS"), and its subdivision Tennessee Administrative Procedures Division ("APD"), to handle the administrative appeal process.

2. TCH's appeal was specifically assigned to Judge D. Kim Summers ("Summers") to act as administrative hearing officer.

3. On several occasions, including, without limitation, July 28, 2013, July 29, 2013, March 12, 2014, and March 14, 2014 TCH made a formal request in writing to APD, DOS and Summers provide TCH with a reasonable modification as required under the ADA to allow it to locate an OTP in Johnson City. All times relevant herein, Summers, APD and DOS failed and

refused to offer TCH a reasonable modification in violation of the ADA.

4. As a proximate cause of Summers' intentional violations of the ADA as alleged herein, TCH has sustained economic and consequential damages in an amount to proven at trial.

**SUMMERS, APD AND DOS VIOLATED THE ADA WHEN THEY RETALIATED AGAINST TCH WHEN IT REQUESTED A REASONABLE MODIFICATION OF THEIR RULES TO ALLOW TCH TO OPEN AN OTP IN JOHNSON CITY**

5. Summers sanctioned TCH for its counsel advising Summers that she was subject to the ADA and that Summers bore certain responsibilities under the ADA to provide TCH with a reasonable modification under federal law. Summers' *sua sponte* and summary revocation of Mr. Dunlap's *pro hac vice* petition (and reporting him to the State Bar of Tennessee for, presumably, disciplinary proceedings) for raising his client's ADA claims was accomplished without any notice to TCH or Mr. Dunlap and was accompanied by inaccurate allegations.

6. Since having a chance to respond, TCH has been able to show that Summers' allegations against Mr. Dunlap were widely off the mark. For example, Summers alleged that Mr. Dunlap effectively committed "fraud on the court" in that he "never disclosed to this tribunal that the [first] federal litigation had been previously dismissed for lack of ripeness." Judge Summer's Order, Conclusions of Law §1, p. 9.

7. Summers' apparently biased allegations against Mr. Dunlap were easily proven to be completely false. At the beginning of this administrative proceeding, Mr. Dunlap gave Summers a detailed verbal summary of the federal action wherein it would have been virtually impossible not to have disclosed the first federal action and its disposition.

8. But, in any event, evidence clearly shows that Mr. Dunlap had provided her written reference to the second federal complaint which references to the first federal action's disposition.

On July 29, 2013, as courtesy to Summers to help her understand the first and second federal actions, Mr. Dunlap, provided Summers with an opportunity to read the second federal action Complaint which clearly referenced and described the first federal action. (Mr. Dunlap's letter references the Complaint with "I'm attaching a copy of the federal complaint."). The second federal Complaint clearly and unambiguously described the first federal action, including its caption, the case number, and specifically saying that the first federal action had been "dismissed without prejudice on ripeness grounds." See *Tri-Cities Holdings et al. v. Tennessee Health Services and Development Agency*, Case No. 13-cv-305 (E.D. Tenn.) [Doc. 1] (p. 32, ¶ 143, n. 67). Summers later claimed that Mr. Dunlap only sent her for the first four pages of the *Tri-Cities II* Complaint. Summers neither noted that only a portion was sent nor asked for a complete copy. Mr. Dunlap was completely reasonable in assuming that Summers had a complete copy of the Complaint that fully disclosed *Tri-Cities I*—through, in any event, the case was already dismissed and completely irrelevant to the administrative appeal.

9. If Summers had read the Complaint, she would have been apprised the nature of then-dismissed first federal action. Instead, she lodges inaccurate but extremely serious allegations against that Mr. Dunlap he has somehow committed fraud on the court by concealing the existence this irrelevant, previously-dismissed action from her. Of course, this is completely and utterly false and Summers' inaccurate allegation in this regard has been proven false.

10. But these clearly incorrect allegations demonstrate amount to retaliation against TCH and TCH's counsel as a result of TCH requesting a reasonable modification under the ADA.

11. Summers appears to contend that Mr. Dunlap's alleged failure to explain the dismissal of the first federal action amounted to fraud on the court or some other serious violation

3

of the Rules of Professional Conduct.  But the first federal action was dismissed <u>before</u> the administrative appeal was <u>even filed</u>.   The first federal action was dismissed <u>without prejudice</u> which allowed TCH to refile the case anyway.  The first federal action <u>did not even involve HSDA</u> as a party.  So the first federal action was clearly completely and utterly irrelevant to the administrative proceeding.  Yet Summers *sua sponte* sanctioned Mr. Dunlap--but not HSDA's counsel--for allegedly failing to disclose it to her (even though HSDA's counsel apparently did not disclose it either).  Sanctioning one side's counsel -- but not the other -- for exactly the same conduct is improper and amounts to retaliation that violates the ADA.

12. Raising suspicion that Summers' incorrect allegation was simply a pretext to provide cover for retaliating against Mr. Dunlap is the fact that she never mentioned or inquired with Mr. Dunlap (or apparently HSDA[1]) on any of her other allegations that she is now declaring amounted to concealment or misrepresentation.   If any of these matters concerned her at any time prior to Mr. Dunlap's March 12, 2014 request for a reasonable modification, wouldn't Summers at least have given Mr. Dunlap a phone call and inquired into the matters?  Yet these apparently hugely important issues were never mentioned until Mr. Dunlap persisted on the ADA issue.

13. Evidence also suggests that Summers contrived the controversy of Mr. Dunlap's alleged failure to report "new developments" in the federal action amounting to a material failure to keep the Court advised.  Summers' allegations are patently incorrect.   The evidence shows that Mr. Dunlap in no way failed to misrepresent the status of the federal action.  Mr. Dunlap simply stated his opinion that there were "no new developments" in the case.  In fact, Mr. Dunlap's

---

[1] TCH would submit that any ex parte communications that Summers had with HSDA, if any, would have be a serious breach of ethics in this matter and that alone would require recusal. But there is no evidence of that here.

4

opinion was ultimately echoed by HSDA's attorney when he did not report any "new developments" either. Summers' allegation against *only* TCH's counsel in this case demonstrates clear bias and an attempt to retaliate against Mr. Dunlap for raising the issue of the application and implications of the ADA. HSDA's attorney failed to report "new developments" as well but, of course, received no censure from Summers.

14. Summers lodged the extremely serious and damning allegations *only against TCH's counsel*, despite the fact that that HSDA was a co-equal party with TCH in both this administrative appeal and also the pending federal action and had equal duties and responsibilities of disclosure as TCH. This clearly and unambiguously suggests that Summers wishes only to sanction TCH and TCH's counsel in a one-side and biased manner—a pretext the ADA retaliation. Judge Summer's allegations of concealment--though unsupported, and ultimately irrelevant-- should have applied equally to HSDA in the case—HSDA has the same duties of candor and disclosure and TCH. Yet Summers attempts to sanction *only* TCH's counsel for alleged concealment of facts from this Court. If these facts that Mr. Dunlap was allegedly concealing were so crucial, why did HSDA not disclose them? HSDA is a co-equal party as TCH in both this and the federal action and had exactly the same duty of disclosure—yet HSDA never received any sanction.

15. A final hearing in the administrative proceeding has been set for July 29, 2014. Despite obvious and irreparable conflicts of interest, Summers has denied TCH's Motion to Recuse and Motion for Reconsideration and she steadfastly refuses to recuse herself from the administrative proceeding.

16. Summers illegal conduct has illegally robbed TCH of the services of its counsel

5

who is the familiar with the facts and issues in this case by far. TCH is severely prejudiced in this proceeding by being denied the services of Mr. Dunlap by the revocation of his *pro hac vice* petition.

**SUMMERS, APD, AND DOS SCHEDULED A FINAL HEARING BEYOND THE 180-DAY TIME LIMIT AS REQUIRED UNDER TENN. CODE ANN. 68-11-1610(D) WHICH ENTITLES TCH TO ISSUANCE OF A CERTIFICATE OF NEED.**

17. On July 3, 2013, TCH filed its administrative appeal of HSDA's denial of TCH's application for a CON.

18. On December 30, 2013, the 180-day statutory deadline for a final hearing on the administrative appeal passed.[2]

19. On March 7, 2014, <u>well after the 180-day deadline</u>, HSDA filed a Motion to Set Hearing.

20. On or about March 14, 2014, <u>well after the 180-day deadline passed</u>, Summers granted the HSDA's motion and scheduled a final hearing on July 29, 2014--390 days from the appeal date. The fact that Summers took pains to change her language to "stay" later on underscores Plaintiffs' point that the case was not "stayed" before the 180-day time limit expired.

21. Plaintiffs respectfully submit that a Certificate of Need ("CON") should be granted *instanter* due to the lack of a hearing being scheduled within 180-days of the filing of TCH's appeal. See Tenn. Code. Ann. 68-11-1610 (d). The appeal was filed on July 3, 2013.

---

[2] Tenn. Code. Ann. 68-11-1610 (d): "[T]he scheduling order for the contested case adopted by the administrative law judge <u>shall</u> establish a schedule that results in a hearing completed <u>within one hundred eighty (180) days of the date on which the petition for contested case was received by the agency</u>, with the initial order to be entered within sixty (60) days of the date the hearing is completed. <u>Extensions of time or variances from the scheduling order shall be granted sparingly, and only because of unforeseen developments that would cause substantial prejudice to a party</u>." (emphasis added). There was never a motion or order granting an extension of time.

6

Summers has set the final hearing date 390 days from the date of filing of the appeal. The deadline has long passed and TCH is still entitled to its CON as a matter of law--with or without a stay.

22. HSDA effectively assented to these delays and never once moved to schedule a final hearing within by the statutory time limit.

**TDMSAS VIOLATED THE ADA AND THE REHABILITATION ACT BY FAILING AND REFUSING TO OFFER TCH A REASONABLE MODIFICATION TO ALLOW IT TO LOCATE AN OTP IN JOHNSON CITY**

23. After obtaining the CON from HSDA, TCH is required to obtain a permit from the Defendant Tennessee Department of Mental Health and Substance Abuse Services ("TDMHSAS") before opening the OTP in Johnson City.

24. As a part of the CON process, TCMHSAS is supposed to issue a "review and analysis" of an applicant's application supposedly for the benefit of HSDA in assisting in its review process.

25. On about June 11, 2013, TDMHSAS issued a "Review and Analysis of Certificate of Need Application Tri-Cities Holdings LLC d/b/a Trex Treatment Center - CN1303-005" on TCH's CON application ("TDMHSAS Report").

26. TDMHSAS failed and refused to offer TCH a reasonable modification to allow TCH to locate an OTP in Johnson City.

27. Specifically, the TDMHSAS Report alleged that there was no showing of "need" in TCH's application, even though TCH had shown ample need in the Proposed Service Area for an Opiate Treatment Program. This area has arguably the highest drug overdose death rate in the nation.

7

28. Specifically, the TDMHSAS Report only grudgingly found evidence of "economic feasibility" in TCH's application, even though TCH had shown clearly that its Opiate Treatment Program would be the only source of MMT in the Proposed Service Area of 600,000 people.

29. Specifically, TDMHSAS refused to find evidence of "orderly development" in TCH's application, even though TCH had shown clearly that its Opiate Treatment Program would advance the orderly development of medical care in the Proposed Service Area.

30. In preparing the TDMHSAS Report, TDMHSAS failed and refused at all times to work with and provide TCH a reasonable modification, or even provide TCH with a single opportunity to modify its application to comply with any alleged deficiency in TCH's application, to allow TCH to obtain its CON and locate an OTP in Johnson City.

31. On or about March 1, 2013, TCH Manager Steve Kester met with E. Douglas Varney and TDMHSAS staff and Kester specifically offered to work with TDMHSAS on TCH's CON application and requested that TDMHSAS allow TCH to locate its OTP in Johnson City.

32. TCH has specifically requested in writing that TDMHSAS provide TCH with a reasonable modification, if necessary, to allow the OTP to be opened in Johnson City.

33. TDMHSAS has violated the ADA and the Rehabilitation Act by refusing to provide a reasonable modification to TCH and has actively sought to block TCH from locating an OTP in Johnson City.

34. Plaintiffs have sustained direct and proximate damages from TDMHSAS' illegal conduct as alleged herein in an amount to be proven at trial.

35. Attached are true and correct copies of the following exhibits referenced in Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction:

8

Case 2:14-cv-00233-JRG-MCLC   Document 15   Filed 06/09/14   Page 8 of 10   PageID #: 127

a. Ex. 1 TDMHSAS Report to HSDA on CN1303-005

b. Ex. HSDA CON Final Report

c. Ex. 3 Articles Attached to TCH CON Application

d. Ex. 4 Kester Slide Presentation

e. Ex. 5 TCH CON ADA Reasonable Accommodation Request Letter No 2

f. Ex. 6 Letter to Tenn SOS Regarding Reasonable Modification

g. Ex. 7 James Dunlap Letter to Judge Summers

h. Ex. 8 *TCH v. HSDA* Doc. 135 Order on Motion for Stay

i. Ex. 9 *TCH v. HSDA* Doc. 150 Order on Motion for Stay

j. Ex. 10 Admin Objection to Motion to Set Final Hearing Date

k. Ex. 11 James Dunlap Second Letter to Judge Summers

l. Ex. 12 Order Revoking Dunlap Pro Hac Vice Status

m. Ex. 13 TCH Motion to Reconsider Revocation of *Pro Hac Vice* Petition

n. Ex. 14 Administrative Order Denying Motion to Recuse and Motion for Reconsideration

o. Ex. 16 Letter to Douglas Varney Regarding Reasonable Modification

p. Ex. 17 Appeal of Revocation of Pro Hac Vice Petition

q. Ex. 18 Steve Kester Declaration

r. Ex. 19 David Lentz. Declaration

s. Ex. 20 Robert Newman Declaration

t. Ex. 21 Second Declaration of Jane Doe No. 2

u. Ex. 22 Second Declaration of John Doe No. 6

9

Case 2:14-cv-00233-JRG-MCLC   Document 15   Filed 06/09/14   Page 9 of 10   PageID #: 128

Executed this June 9, 2014.

**s/James A. Dunlap Jr.**
James A. Dunlap Jr., Esq.