Law Offices
James A. Dunlap Jr. & Associates LLC
310 Windsor Gate Cove NE
Atlanta, Georgia  30342

Phone:  (404) 354-2363                                                                    E-mail:
Fax:  (404) 745-0195                                                        jim@jamesdunlaplaw.com

July 25, 2013

VIA REGULAR MAIL

Department of State
Administrative Procedures Division
312 Eighth Avenue North, 8th Floor
William R. Snodgrass Tower
Nashville, Tennessee  37243

Re:  **Tri-Cities Holdings LLC d/b/a Trex Treatment Center**
**CON #1303-005D**
**Docket No.:  T.B.A.**

**Tri-Cities Holdings LLC, et al. v. Tennessee Health Services and Development Agency, et al.**
**United States District Court (M.D. Tenn.)**
**Case No. 3:13-cv-669**

Dear Sir or Madam:

I represent Tri-Cities Holdings LLC d/b/a Trex Treatment Center ("TCH"), the above-captioned applicant.  In addition, I also represent eight (8) residents of the Johnson City, Tennessee area who are addicted to opiates and who are recognized as disabled under federal law, including the ADA and the RA ("Individual Clients").

On behalf of my clients, I would ask your office directly to provide my clients with a reasonable modification of any and all applicable state and local rules and regulations as required under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("Rehabilitation Act") from your office, <u>and to the administrative hearing officer assigned to this case</u>, and any other applicable agency of the State of Tennessee, to allow TCH to locate its Opiate Treatment Program at 4 Wesley Court, or elsewhere, in Johnson City, Tennessee.

The Attorney General of the United States, at the instruction of Congress,[1] has issued an implementing regulation that outlines the duty of a public entity to accommodate reasonably the needs of the disabled. The Title II regulation reads:

> A public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity.[2]

This duty to reasonably accommodate is an *affirmative* duty and federal law is *supreme* to any and all Tennessee laws and rules.[3] Accordingly, the Supreme Court declared that Title II imposes an "obligation to accommodate," or a "reasonable modification requirement."[4]

As directed by Congress, the Attorney General issued regulations implementing title II, which are based on regulations issued under section 504 of the Rehabilitation Act.[5] The title II regulations require public entities to "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities."[6] The preamble discussion of the "integration regulation" explains that "the most integrated setting" is one that "enables individuals with disabilities to interact with nondisabled persons to the fullest extent possible . . . ."[7]

In *Olmstead v. L.C.*, 527 U.S. 581 (1999), the Supreme Court held that title II prohibits the unjustified segregation of individuals with disabilities. The Supreme Court held that public entities are required to provide community-based services to persons with disabilities when (a) such services are appropriate; (b) the affected persons do not oppose community-based treatment; and (c) community-based services can be reasonably accommodated, taking into account the resources available

---

[1] See 42 U.S.C. § 12134(a) ("[T]he Attorney General shall promulgate regulations in an accessible format that implement this part."). The Attorney General's regulations, Congress further directed, "shall be consistent with this chapter and with the coordination regulations ... applicable to recipients of Federal financial assistance under [§ 504 of the Rehabilitation Act]." *Id.* § 12134(b).
[2] 28 C.F.R. § 35.130(b)(7).
[3] *Tennessee v. Lane*, 541 U.S. 509 (2004).
[4] *Id.* at 532–33; *see also Alexander v. Choate*, 469 U.S. 287, 301 (1995)(suggesting Rehabilitation Act requires "meaningful access" and "reasonable accommodations"); *accord*, *Ability Center, Toledo v. City of Sandusky*, 385 F.3d 901, 908 (6th Cir., 2004) ("Title II targets more than intentional discrimination….")
[5] See 42 U.S.C. § 12134(a); 28 C.F.R. § 35.190(a); Executive Order 12250, 45 Fed. Reg. 72995 (1980), reprinted in 42 U.S.C. § 2000d-1.
[6] 28 C.F.R. § 35.130(d) (the "integration mandate").
[7] 28 C.F.R. Pt. 35, App. A (2010) (addressing § 35.130).

to the entity and the needs of others who are receiving disability services from the entity.[8] Failure to make a reasonable modification is separate theory of liability under Title II and its implementing regulations. See 28 C.F.R. § 35.130(b) (7). Pursuant to this regulation, federal courts hold that a "failure to accommodate is an independent basis for liability under the ADA."[9] To comply with the ADA's integration mandate, public entities must reasonably modify their policies, procedures or practices when necessary to avoid discrimination.[10] The obligation to make reasonable modifications may be excused only where the public entity demonstrates that the requested modifications would "fundamentally alter" its service system.[11]

In this case, not only did HSDA and Johnson City fail to provide a reasonable accommodation, they failed to even *attempt* one. This is clearly a violation of the ADA and the Rehabilitation Act. By consciously denying disabled persons access to doctor-prescribed, standard of care treatment for their disability, HSDA and Johnson City is attempting to eliminate "undesirable" disabled persons from the community.

In this case, evidence shows that HSDA and Johnson City intentionally disregarded the plaintiffs' rights. In the alternative, at a bare minimum, HSDA and Johnson City were consciously indifferent to the plaintiffs' claims amounting to intentional discrimination in violation of the ADA and the Rehabilitation Act.[12]

Second, I will be asking the federal court to stay the above-captioned administrative appeal I have filed while the federal case is pending. I would ask that

---

[8] *Olmstead v. L.C.*, 527 U.S. at 607.

[9] *Sak v. City of Aurelia*, 832 F.Supp.2d 1026 (N.D. Iowa 2011), *citing Wisconsin Community Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 751 (7th Cir. 2006), *Frame v. City of Arlington*, 657 F.3d 215, 231 (5th Cir.2011) (noting that Title II does more than prohibit disability discrimination by a public entity, because it "imposes an 'obligation to accommodate,' or a 'reasonable modification requirement,' " but expressing no opinion "as to whether (or when) a failure to make reasonable accommodations should be considered a form of intentional discrimination, a form of disparate impact discrimination, or something else entirely"); *Pena v. Bexar County, Texas*, 726 F.Supp.2d 675, 683 (W. D. Tex. 2010) (Title II of the ADA "imposes upon public entities an affirmative obligation to make reasonable accommodations for disabled individuals") (citing *Bennett–Nelson v. La. Bd. of Regents*, 431 F.3d 448, 454 (5th Cir.2005)).

[10] 28 C.F.R. § 35.130(b)(7).

[11] Id.; *see also Olmstead*, 527 U.S. at 604-07.

[12] *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir.2001) ( "To recover monetary damages under Title II of the ADA or the Rehabilitation Act, a plaintiff must prove intentional discrimination on the part of the defendant.... We now determine that the deliberate indifference standard applies." (citations and footnote omitted)). In *Duvall*, the Ninth Circuit held that intentional discrimination can be shown by establishing "deliberate indifference" by the defendant. *Id.* The Duvall court further explained that "[d]eliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon the likelihood." *Id.* at 1139.

Page 4 of 8
Department of State Administrative Procedures Division
July 25, 2013

you advise if that is acceptable and then we can enter a consent order on that issue? The administrative appeal claims are included in Counts 13 and 14 in the federal complaint.

Under the ADA, a state or local law is "facially discriminatory"[13] if it subjects drug treatment programs to more restrictive standards than other comparable facilities.[14] Such a law violates the ADA unless the treatment program can be shown to pose a direct threat or significant risk to the health or safety of others.[15] Johnson City's Zoning Ordinance restricting methadone clinics is facially discriminatory because: (1) methadone clinics are subjected to more restrictive zoning standards than comparable medical facilities; and (2) individuals seeking treatment at methadone clinics do not pose a direct threat to the health or safety of others that would justify more burdensome treatment.

Three different circuits – including the Sixth Circuit--have held that restrictions on addiction treatment programs were facially discriminatory because they did not apply equally to comparable programs for people without disabilities. In *MX Group, Inc. v. City of Covington*, 293 F.3d 326 (6th Cir. 2002), the city would not permit the plaintiff to locate a methadone clinic, in response to community opposition.[16] The city then adopted an amendment to the zoning code limiting the number of addiction treatment facilities to one facility for every 20,000 persons in the city, which completely foreclosed the plaintiff's opportunity to locate in the city.[17] The district

---

[13] "'[F]acial' challenges to regulation[s] are generally ripe the moment the challenged regulation or ordinance is passed." *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 736 n.10 (1997); see also *Cnty. Concrete Corp. v. Township of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006)(citations).

[14] *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 304-05 (3d Cir. 2007); *MX Group*, 293 F.3d at 344-45; *Bay Area*, 179 F.3d at 733-34; see also First Step, Inc. v. City of New London, 247 F. Supp. 2d 135 (D. Conn. 2003)*Habit Mgmt. v. City of Lynn*, 235 F. Supp. 2d 28, 29 (D. Mass. 2002). It should be noted that facial discrimination is a type of intentional discrimination claim and can serve as proof of discriminatory intent. *Larkin v. Mich. Dep't of Social Servs.*, 89 F.3d 285, 289 (6th Cir. 1996); *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1500-01 (10th Cir. 1995); First Step, Inc., 247 F. Supp. 2d at 150-51; Hispanic Counseling Ctr., 237 F. Supp. 2d at 292-93; Sunrise Dev., Inc. v. Town of Huntington, 62 F. Supp. 2d 762, 774 (E.D.N.Y. 1999).

[15] *New Directions*, 490 F.3d at 306-07; *Bay Area,* 179 F.3d at 737; *Habit Management v. City of Lynn*, 235 F.Supp.2d 28, 29 (D. Mass. 2002). In determining whether a program poses a direct threat to the health or safety of others, a public entity must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk.
28 C.F.R. pt. 35 app. A, Section 35.104 (2009); 28 C.F.R. § 35.139 (eff. Mar. 15, 2011).

[16] 293 F.3d at 329-330.

[17] *Id.* at 330-31.

court entered judgment for the plaintiff following a bench trial. The Sixth Circuit affirmed the district court's judgment and agreed that the ordinance was facially discriminatory.[18] Thus, the Sixth Circuit concluded that the district court correctly found that the city's decision to amend the zoning code to prevent the plaintiff from operating anywhere in the city violated the ADA.[19]

In *New Directions Treatment Servs. v. City of Reading,* 490 F.3d 293 (3d Cir. 2007), the plaintiff sought to locate a methadone clinic.[20] The city denied a permit to the plaintiff, relying on a Pennsylvania statute that prohibited addiction treatment clinics from locating within 500 feet of a school, playground, park, residential area, child-care facility, or place of worship, except by approval of the locality's governing body.[21] The Third Circuit held that the Pennsylvania statute "facially singles out methadone clinics, and thereby methadone patients, for different treatment, thereby rendering the statute facially discriminatory" under the ADA.[22]

In *Bay Area Addiction Research and Treatment, Inc. v. City of Antioch,* 179 F.3d 725 (9th Cir. 1999), the operator and patients of a methadone clinic sued the City of Antioch after it adopted an ordinance prohibiting methadone clinics from locating within 500 feet of any residential property.[23] The Ninth Circuit concluded that the ordinance was facially discriminatory and a *per se* violation of title II of the ADA, 42 USC § 12132, because it subjected methadone clinics, but not other medical clinics, to a spacing limitation.[24]

HSDA's own rules clear violate the ADA and the Rehabilitation Act. Federal courts that find discriminatory notice requirements, like HSDA's requirement for methadone clinics[25], and only such clinics, to notify local politicians of a CON

---

[18] *Id.* at 328, 344-45.
[19] *Id.*
[20] 490 F.3d at 296-97.
[21] *Id.* at 298-99.
[22] *Id.* at 304.
[23] 179 F.3d at 727-28.
[24] *Id.* at 734-35.
[25] Tenn. Code§ Section 68-11-1607(c)(3) provides: "Within ten (10) days of the filing of an application for a nonresidential substitution-based treatment center for opiate addiction with the agency, the applicant shall send a notice to the county mayor of the county in which the facility is proposed to be located, the member of the house of representatives and the senator of the general assembly representing the district in which the facility is proposed to be located, and to the mayor of the municipality, if the facility is proposed to be located within the corporate boundaries of a municipality, by certified mail, return receipt requested, informing such officials that an application for a nonresidential s facility has been filed with the agency by the applicant. All applications, original and simultaneous review, shall not enter the next review cycle, unless filed with the agency within such time as to assure that such application is deemed complete in accordance with the rules of the agency."

application. This is plainly intended to galvanize local opposition to the CON application. Federal courts have uniformly found such requirements to violate the ADA. In *Potomac Group Home v. Montgomery County, Md.*, the court declared that notice provisions that "galvanize" opposition are repugnant to federal law:

> This requirement is equally as offensive as would be a rule that a minority family must give notification and invite comment before moving into a predominantly white neighborhood. The obvious result of these notifications to neighbors is the antithesis of the professed "integration" goal of defendants. Indeed, notices of this sort galvanize neighbors in their opposition to the homes.

*Potomac Group Home v. Montgomery County, Md.*, 823 F.Supp. 1285, 1296 (D. Md. 1993). HSDA's clearly illegal requirement to notify local politicians when we applied for the clinic provides the lever to engage the federal court to provide equitable relief in forcing the issuance of the CON. HSDA also clearly failed to offer a reasonable modification of its rules to allow the CON to be issued. Indeed, the panel split 6-2 and denied the CON so very little, if anything, needs to be done by HSDA to issue the CON.

Presently, an army of at least 500 disabled persons including pregnant women--and probably more than 1,000—are having to get up as early as 1-4AM and drive 100+ miles, as often as daily, to receive doctor-prescribed, standard of care, life-saving medication that is not available within 50 miles of Johnson City.[26] New patients trying to save their lives from opiate addiction must undertake this drive every day for the first 90 days of treatment. Only a sadist could consider this situation acceptable.

It is undisputed that at least one 22-year old woman from Jonesborough died as a result of a collision with an exhausted disabled person having gotten up at 4AM and driven 120+ miles to and from an OTP in North Carolina—toxicology reports indicated methadone was not involved, just the exhaustion from these marathon treks that patient was required to take to get her medication.

TCH's proposed clinic will allow my Individual Clients--along with hundreds of other similarly disabled area residents which include pregnant women – to have access to doctor-prescribed, life-saving, "standard of care"[27] methadone maintenance treatment (MMT) for the first time in the proposed service area.

---

[26] These facts were outlined in the CON application, at the June 26, 2013 CON hearing, and letters I sent to HSDA on June 18, 2013 and June 28, 2013 asking for a reasonable modification under the ADA and the Rehabilitation Act.

[27] The term "standard of care" treatment is generally recognized as treatment that is accepted by medical experts as a proper treatment for a certain type of disease and that is widely used by healthcare

Presently, this standard of care, life-saving treatment is available only in distant out-of-state clinics (primarily in North Carolina) offering standard of care treatment more than 100 miles roundtrip, over potentially dangerous mountain roads in all weather conditions, from many parts of the proposed service area. At present, MMT standard of care treatment is available at approximately 1,300 clinics across the United States <u>and at least twelve other clinics in other parts of Tennessee</u>. The standard of care for many opiate-addicted persons, and unquestionably for pregnant women, is Methadone Maintenance Treatment ("MMT") that TCH seeks to provide and which is presently unavailable anywhere in the Proposed Service Area.

It's undisputed that there is a "migration" of 400-500 recovering opiate-addicted patients in the Johnson City area who now are being forced to drive more than 100 miles roundtrip, as often as daily, to distant OTP clinics in North Carolina which offer the nearest available of standard of care MMT. These ADA-disabled persons are being exhausted by having to wake up at between 1AM-4AM and embark on these marathon journeys on dangerous mountain roads. Clearly, people are dying because of this exhausted army of disabled people driving on East Tennessee roads as often as daily.[28] Distance is also unquestionably a barrier to treatment so these great distances to treatment lowers treatment rates among recovering addicts.

Therefore, TCH, and my individual clients again request that your office provide TCH a reasonable modification or accommodation under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973 ("RA") to allow TCH to obtain a Certificate of Need and allow it to establish an Opiate Treatment Program (OTP) in Johnson City, Tennessee as requested in its CON application which will allow persons recognized as disabled under the ADA and the RA to have reasonable access to standard of care treatment for their disability.

In conclusion, the present situation in Johnson City constitutes a public health catastrophe (with approximately one death from drug overdose occurring in the area every three days) and I would ask you and your office to take immediate action to rectify this and allow TCH's OTP standard of care program to locate in Johnson City and exist such clinics do in other parts of Tennessee.

---

professionals. Standard of care is also called "best practice," "standard medical care," and "standard therapy. National Cancer Institute at the National Institute of Health (http://www.cancer.gov/dictionary?cdrid=346525).

[28] "Judge Wants to Look Up Law Before Accepting Plea in Vehicular Homicide Case," *Johnson City Press*, June 29, 2013 (Johnson City area woman woke up at 4AM, drove 100 miles roundtrip to North Carolina OTP clinic for standard of care MMT treatment, then drove home, took husband to work, then fell asleep at wheel, crossed center lane, and hit and killed 22-year old Jonesborough woman. Police said blood test results showed exhaustion, not MMT treatment, was to blame).

Sincerely,
James A. Dunlap Jr. & Associates LLC

*[signature]*

James A. Dunlap Jr.

JAD/jd

Cc: Jim Christoffersen, General Counsel HSDA (via email)
Erick Herrin, City Attorney for Johnson City, TN (via email)