# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### GREENEVILLE

|  |  |  |
|---|---|---|
| | ) | |
| Tri-Cities Holdings LLC, et al. | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Case No. 2:14-cv-00233** |
| | ) | |
| | ) | **Judge Greer** |
| Tennessee Administrative Procedures Division, et al. | ) | **Magistrate Judge Corker** |
| | ) | |
| Defendants. | | |

_____

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

James S. Higgins, Esq. .  BPR # 16142
The Higgins Firm PLC
525 4th Ave S
Nashville, TN 37210
Phone (615) 353-0930
Fax (615) 467-2443
rdp@higginsfirm.com

James A. Dunlap Jr., Esq.
James A. Dunlap Jr. & Assoc. LLC
Georgia State Bar No.  003280
4403 Northside Parkway NW Suite 1413
Atlanta, Georgia  30327
404-354-2363
404-745-0195 (fax)
jim@jamesdunlaplaw.com

Counsel for Plaintiffs

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................... 1

I.    STATEMENT OF FACTS .............................................................................................. 1

      A.    The ALJ, DOS, APD and TDMHSAS failed to provide TCH a reasonable
            modification as required under the ADA. ............................................................ 2

      B.    The ALJ retaliated against TCH's counsel by alleging he committed felony
            criminal extortion against her, and ejected him from the case, for requesting
            a modification under the ADA. ........................................................................... 3

      C.    The ALJ's *sua sponte* allegation of a failure to disclose "new developments"
            in the case is completely baseless. .................................................................... 8

      D.    The ALJ's findings that Mr. Dunlap committed misconduct are clearly
            erroneous. ........................................................................................................ 18

            1.    The ALJ allegation that Mr. Dunlap concealed that the federal court
                  action "was now, itself, subject to a stay in deference to the
                  administrative proceeding" is clearly erroneous based on fact and
                  law. ...................................................................................................... 18

            2.    Mr. Dunlap never misled the ALJ when on January 8, 2014 he
                  indicated his good faith opinion was that there were no "new
                  developments" in the case and that he reasonably relied on HSDA
                  counsel's assurances that HSDA would advise shortly on "new
                  developments" that the HSDA counsel perceived at the time. ................. 20

II.   STANDARD OF REVIEW ............................................................................................. 21

III.  ARGUMENT AND CITATION OF AUTHORITY ....................................................... 21

      A.    Defendants failed to provide a reasonable modification to TCH. .......................... 22

      B.    Even assuming *arguendo*, that TCH's counsel committed some form of
            misconduct (an allegation that TCH and its counsel vehemently deny), such
            alleged misconduct does not entitle Defendants to ignore the ADA. ..................... 22

      C.    The ALJ's allegation that TCH's counsel committed felony criminal
            extortion after he requested the ALJ provide a reasonable modification
            constitutes retaliation under the ADA. ................................................................ 23

      D.    TCH's counsel has a right to fairly comment on the legality of the
            administrative proceeding in reference to the ADA. ............................................. 24

i

# INTRODUCTION

Plaintiffs Tri-Cities Holdings LLC ("TCH"), Jane Doe Nos. 1-2, and John Doe Nos. 1-6 ("the Individual Plaintiffs") (collectively "Plaintiffs") bring claims against the Defendants under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1974 ("Rehabilitation Act").[1]

## I.    STATEMENT OF FACTS

This action stems in part from an ALJ's charge of criminal extortion against, and revocation of the *pro hac vice* petition of TCH's counsel James Dunlap ("Mr. Dunlap") without prior notice of any kind.   This was done after Mr. Dunlap requested the ALJ provide reasonable modification required under the ADA during an administrative appeal of a denial of TCH's Certificate of Need by the Tennessee Health Services and Development Agency ("HSDA"). Exhibit 1,  Admin. T. R. Vol. 2, pp. 166-175; Exhibit 2 (TCH letter to DOS requesting reasonable modification).   In addition, Defendants failed to provide TCH with a reasonable modification as required and required under the ADA.  The Individual Plaintiffs are addicted to

---

[1] D. Kim Summers, in her official capacity as Administrative Law Judge, Tennessee Administrative Procedures Division, (collectively "APD"), Defendant Tennessee Department of State, Defendant Tre Hargett, Tennessee Secretary of State, in his official capacity as Tennessee Secretary of State (collectively "DOS"), Tennessee Department of Mental Health and Substance Abuse Services, and E. Douglas Varney, Commissioner, in his official capacity as Commissioner discriminate against individuals who receive opiate addiction treatment, including pregnant women and their unborn children, in violation of title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.,* and Section 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. Sec. §§ 794 *et seq*., and their respective implementing regulations.

opiates and disabled under the ADA. See Docs. 15-18, 15-19, 15-20, 15-21 (declaration of physicians and Individual Plaintiffs as to plaintiffs' addiction to opiate constituting a disability).

### A. The ALJ, DOS, APD and TDMHSAS failed to provide TCH a reasonable modification as required under the ADA.

DOS and the ALJ ignored numerous TCH requests for a reasonable modification. Docs. 15-6, 15-7, 15-11. This is a violation of the ADA. The ADA affirmatively requires public entities <u>relocate</u> disabled facilities which all Defendants failed to even attempt.[2]

It is undisputed that the ALJ failed to provide TCH with a reasonable modification as required under the ADA to allow the CON to be issued. The ALJ ignored TCH's request for a reasonable modification under the ADA to allow issuance of a Certificate of Need. Secondly, she alleged -- without any notice whatsoever -- that TCH's counsel had committed criminal extortion against her (a Class D felony) by demanding she comply with the ADA and provide TCH with a reasonable modification. Surely, state employees should not be able to threaten persons seeking relief under the ADA with extortion allegations, and such threats amounts to retaliation which is a cause of action under the ADA.

It is undisputed that the TDMHSAS failed to provide TCH with a reasonable modification requested, and required, under the ADA to allow the CON to be issued. See Doc. 15-15 (April 7, 2014 TCH letter to TDMHSAS). TDMHSAS ignored TCH's request and never even attempted a reasonable modification. Furthermore, despite evidence of some 10,000

---

[2] *Equal Emp't Opportunity Comm'n* ., 763 F.3d 963, 971 ("affirmative duty"); "ADA Access to Medical Care…." U.S. Department of Justice, July, 2010 ("Under Title II, a public entity must ensure that its program as a whole is accessible…**such as relocating activities to accessible locations**.") (https://www.ada.gov/medcare_mobility_ta/medcare_ta.htm).

overdose deaths in Tennessee and some 1,000 in the Johnson City area in the last decade,[3]

TDMHSAS flatly declared in its CON review report that "Need has not been clearly

established...."[4]  See Doc. 15-1, p. 5.  An HSDA Board Member later ridiculed this position as

"almost comical." [5] A reasonable modification on all the CON criteria would have been a simple

matter as it was done subsequently with the politically-connected Mountain States Health

Alliance CON application.  See Exhibit 5, p 8.  ("[need] has been reasonably established.").

TCH's modification is reasonable in part because TDMHSAS and HSDA previously licensed

twelve (12) other Opiate Treatment Programs in Tennessee.  Dunlap Declaration ¶¶ 5, 33, 102.

>    **B.  The ALJ retaliated against TCH's counsel by alleging he
>         committed felony criminal extortion against her, and ejected
>         him from the case, for requesting a modification under the
>         ADA.**

After TCH's counsel presented the ALJ with multiple well-founded and carefully-crafted

requests for a reasonable modification under the ADA, the ALJ suddenly -- and without notice of

any kind whatsoever -- issued an order that makes a panoply of baseless allegations and findings

against Mr. Dunlap (including felony extortion carrying a twelve year prison sentence) and

revoked Mr. Dunlap's *pro hac vice* petition in the case.  Exhibit 1,  Admin. T. R. Vol. 2, p. 176-

---

[3] TDMHSAS Commissioner E. Douglas Varney, Governor's Safety Forum Presentation, Governor's Action Plan with Concentration on Prescription Drug Abuse, December 6, 2012; Overdoses Leading Cause Of Tennessee Deaths, By Associated Press, July 29, 2014, http://www.timesfreepress.com/news/2014/jul/29/overdoses-leading-cause-tennessee-deaths/?print.

[4] Review and Analysis of Certificate of Need Application Tri-Cities Holdings LLC d/b/a Trex Treatment Center- CN1303-005, June 11, 2013, p. 5.

[5] "From a physician's perspective, the question of does it meet the criteria for need is almost comical in our state. I mean, we're so far off the charts in need. This [MSHA's OTP clinic] is a drop in the bucket [to address need]…."  Dr. Martin Fleming, HSDA Hearing Transcript, August 24, 2016, p. 78, l. 4.

198, Vol. 3, p. 280-288, 289-294, and 295-302; Admin. T. R. Vol. 2, p. 166-175. The ALJ did so without even notifying TCH or Mr. Dunlap of the finding beforehand or allowing TCH or Mr. Dunlap to respond. Exhibit 1, Admin. T. R., Vol. 2, pp. 175.

After Mr. Dunlap made a demand for a reasonable modification under the ADA, the ALJ alleged and found, in a *sua sponte* order without notice, that Mr. Dunlap had concealed the dismissal without prejudice on ripeness grounds of a prior dismissed-without-prejudice federal case that never involve HSDA as a party: *Tri-Cities I*.[6] Exhibit 1, Admin. T. R., Vol. 2, pp. 174. Tellingly, HSDA's attorneys never disclosed the case either, apparently agreeing with Mr. Dunlap that the case was not relevant.

After Mr. Dunlap's ADA request, the ALJ also alleged and found *sua sponte* that Mr. Dunlap concealed that a second federal action was subject to a "stay in deference of the administrative proceeding, holding": Exhibit 1, Admin. T. R., Vol. 2, pp. 174. The ALJ specifically found:

> He [Mr. Dunlap] never disclosed to this tribunal that the federal litigation had previously been dismissed for lack of ripeness or that it was now, itself, subject to a stay in deference to the administrative proceedings.

*Id*. Likewise, HSDA's lawyers never disclosed this federal "stay" because it never existed.[7]

_____

[6] *Tri-Cities Holdings LLC et al. v. City of Johnson City et al*., Case No. 2:13-CV-108 (E.D. TennExhibit

[7] By way of background, *Tri-Cities I* was TCH's and multiple individual disabled plaintiffs' first action filed in federal court against Johnson City after it denied TCH's application to establish an Opiate Treatment Program in Johnson City. HSDA was never a party in *Tri-Cities I*. Even before TCH filed its administrative appeal with HSDA over the denial of the CON, *Tri-Cities I* had been dismissed by the federal court without prejudice, allowing the plaintiffs in that action to refile the action, which they did in a second action referred to herein as *Tri-Cities II*.[7] All claims in *Tri-Cities I* were the same in *Tri-Cities II* along with additional claims against HSDA arising from the denial of the Certificate of Need

In addition, the allegation that Mr. Dunlap failed to disclose *Tri-Cities I* to the ALJ is patently incorrect <u>based on the record</u>. On July 29, 2013, Mr. Dunlap sent what he thought was a complete copy of the *Tri-Cities II* Complaint to the ALJ along with his letter ("I'm attaching a copy of the [*Tri-Cities II*] federal complaint.". Exhibit 1, Admin. T. R., Vol. 3, pp. 289 . Mr. Dunlap did this to assist the ALJ in understanding the issues in the federal action. The *Tri-Cities II* Complaint clearly and unambiguously identifies *Tri-Cities I* and its outcome:

> *Tri-Cities Holdings et al. v. Johnson City et al.*, Case No. 13-cv-108 (E.D. Tenn. 2013)(<u>case dismissed without prejudice on ripeness grounds</u>.

See *Tri-Cities I*, E.D. Tenn. Case No. 13-108, Doc. 1, p. 32, n. 67 (emphasis added)Exhibit 1, Admin. T. R. Vol 1., p. 13.

TCH's Complaint in *Tri-Cities II* clearly and unambiguously references evidence and testimony from *Tri-Cities I* multiple times. Later, the ALJ claimed that she only received the Table of Contents of the Complaint. But she never mentioned receiving an incomplete copy, or asked for a complete copy from Mr. Dunlap, until after she alleged and found that Mr. Dunlap had *concealed Tri-Cities I* and ejected him from the case without any notice whatsoever. Mr. Dunlap fairly assumed that the ALJ had access to a complete copy and would have enough interest in the case to read the Complaint. There was no concealment by Mr. Dunlap. Mr.

---

There are no transcripts of the several telephone conference calls between and among the ALJ, TCH's and HSDA's counsel in the case. Mr. Dunlap does recall painstakingly recounting the history of the litigation and the application of the ADA in the administrative appeal. Mr. Dunlap believes that it would have been virtually impossible that during these calls that he would not have briefly explained the *Tri-Cities I* case at least once—that it had been <u>dismissed without prejudice</u> and <u>all claims in it had been re-alleged in the refiled *Tri-Cities II*</u>. Because of this fact, *Tri-Cities I* remains *completely* irrelevant to the administrative appeal for all practical purposes and no mention of it would have been required. HSDA's counsel were present, were aware of *Tri-Cities I*, and apparently never mentioned *Tri-Cities I* at any time. Yet no foul for HSDA.

Dunlap reasonably believed he had disclosed the nature and outcome of the for-all-practical-purposes-irrelevant *Tri Cities I* at least by giving the ALJ access to the *Tri-Cities II* Complaint.[8]

Finally, in her subsequent recusal order, the ALJ <u>changes her reasoning entirely</u> as to why she ejected Mr. Dunlap from the case and then ejected him on new grounds—again without any prior notice whatsoever. Exhibit 1, Admin. T. R., Vol. 4, pp. 2-3.[9]

---

[8] Even *arguendo* that *Tri-Cities I* was not disclosed to The ALJ by any party, Mr. Dunlap had no obligation to disclose *Tri-Cities I*. That action was over. It had been dismissed without prejudice allowing all issues to be raised in a new proceeding. The dismissed and no-longer-pending *Tri-Cities I* was completely irrelevant to the administrative proceedings. The administrative appeal involved the denial of TCH's application for a Certificate of Need. *Tri-Cities I* did not involve any claims arising from the denial of the Certificate of Need. *Tri-Cities I* did not involve any claims arising in the administrative proceeding against HSDA. In sum, Mr. Dunlap did not commit misconduct, and therefore should not be punished, for not disclosing an irrelevant, non-pending federal action that was dismissed before the administrative appeal was even filed. Crucially, the ALJ never so much as asked Mr. Dunlap once about the effect of *Tri-Cities I* on the administrative proceeding before ejecting him from the case without notice. Tenn. Sup. Ct. Rule 19 exists to prevent this sort of arbitrary and capricious ejection of counsel in Tennessee courts.

[9] In her recusal order, the ALJ abandons her prior allegations of concealment of a "stay," but provides completely new reasoning that the "relevance of both *Tri-Cities I* and <u>*Tri-Cities II*</u> to these administrative proceedings is the indication from the federal court of its preference for completion of the administrative proceedings prior to commencement of the federal litigation." *Id*. The ALJ's new-found "preference for completion" was <u>not in any order from the federal court</u> but in *dicta* in a transcript of colloquy of counsel with the Magistrate Judge during a discovery motion hearing. Exhibit 1, Admin. T. R., Vol. 3, pp. 251-53. And no notice of the ALJ's change in allegation.

Thus, the ALJ ejected Mr. Dunlap from the case without notice on what turned out to be a baseless allegation of a concealed federal court "stay." The stay that the ALJ's based her allegation of concealment never existed and yet ejected TCH's counsel before he could explain how the ALJ was wrong and no misconduct had occurred. But, predictably, chaos ensued. Allowing the ALJ to revoke a *pro hac vice* petition without notice, but then changes here reasoning after-the-fact, in no way satisfies the Tenn. Sup. Ct. Rule 19 "appropriate notice" requirement.

The ALJ erroneously alleged and found--<u>all without any notice to TCH whatsoever</u>--that Mr. Dunlap intentionally concealed the existence of a prior federal case, ("*Tri-Cities I*"). This case was, in any event, completely irrelevant to the administrative appeal process. HSDA's lawyers apparently and rightfully agreed with Mr. Dunlap and considered so case unimportant as to not disclose it either. In fact, Mr. Dunlap did disclose *Tri-Cities I* because it was specifically

The ALJ even made the outlandish allegation that Mr. Dunlap committed criminal extortion against her[10] -- a Class D felony carrying a twelve year prison term – when Mr. Dunlap demanded a reasonable modification under the ADA. The ALJ's allegation that Mr. Dunlap committed extortion arises exclusively from TCH's and the individual plaintiffs' rightful ability to raise (even in forceful terms) their contentions related to the ADA's application and effect on the administrative proceeding. TCH's right to counsel should not be denied because its attorney raised these matters with the ALJ in a completely appropriate manner.

Although Mr. Dunlap always made his requests to the ALJ with a reference to the "reasonable modification requirement" under Title II of the ADA, by operation of Tennessee law (Tenn. Code. Ann. 68-11-1610(d)), as of December 30, 2013, the 180-day statutory deadline for a final hearing on the administrative appeal had expired and Mr. Dunlap believed, in good faith, that he was entitled also to demand an issuance of the CON without a hearing and with or without a reference to the ADA—though he always did that.

---

referenced in *Tri-Cities II's* Complaint which Mr. Dunlap provided either an entire copy, or full citation to it, to the ALJ in a letter. Exhibit 1, Admin. T. R. Vol. 3, p. 289.

The ALJ erroneously alleged and found, all without any notice to TCH whatsoever, that Mr. Dunlap concealed that the federal court action was "stayed in deference to the administrative proceeding" because (a) the case was never stayed in this manner and (b) for two months HSDA's lawyers made the exact same representations to the ALJ as Mr. Dunlap did regarding the federal case. The fact is there was no concealment by anybody and the allegations are without support.

The ALJ erroneously alleged and found, all without any notice to TCH whatsoever, that Mr. Dunlap never intentionally concealed "any new developments" on January 10, 2014, because there were no material "new developments" at that time and (b) HSDA's lawyers had the same access to the federal action as Mr. Dunlap and they apparently agreed with Mr. Dunlap because they disclosed no "new developments" either for more than two months.

[10] The ALJ alleges Mr. Dunlap violated Tenn. Code Ann. § 39-14-112 (criminal extortion), Revocation Order, p. 10 Exhibit 1, Admin. T. R. p. 175Exhibit

**C. The ALJ's *sua sponte* allegation of a failure to disclose "new developments" in the case is completely baseless.**

Mr. Dunlap disputes that he committed any misconduct when he responded to the ALJ's January 8, 2014 inquiry "that there were no new developments" because the Motion for Summary Judgment and Motions to Dismiss were still pending in the federal court action (for more than four months at that time.   The email string between Mr. Dunlap, HSDA's counsel, and the ALJ Exhibit 1,  Admin. T. R. Vol. 3, p. 233) is shown below:

**Jim Dunlap (GMAIL)**

| | |
|---|---|
| **From:** | Jim Christoffersen <Jim.Christoffersen@tn.gov> |
| **Sent:** | Thursday, January 09, 2014 8:30 AM |
| **To:** | Jim Dunlap (GMAIL); D.Kim Summers |
| **Cc:** | Rick Piliponis |
| **Subject:** | RE: In re Tri-Cities Holdings |
| | |
| **Flag Status:** | Flagged |

Judge Summers:

I would say there have been new developments. I will file something explaining them, but it would probably serve little purpose to have a teleconference until then.

Jim Christoffersen
General Counsel
Tennessee Health Services and Development Agency
Andrew Jackson Bldg., 9th Fl.
502 Deaderick St.
Nashville, TN 37243

(615) 741-2364

---

**From:** Jim Dunlap (GMAIL) [jadunlapjr@gmail.com]
**Sent:** Wednesday, January 08, 2014 3:35 PM
**To:** D.Kim Summers
**Cc:** Jim Christoffersen; Rick Piliponis
**Subject:** Re: In re Tri-Cities Holdings

Judge Summers:

No new developments. Motion for Summary Judgement and Motions to Dismiss are pending. I would suggest another 60 day stay in our matter.

Thanks. Jim.

On Jan 8, 2014, at 4:26 PM, D.Kim Summers <D.Kim.Summers@tn.gov> wrote:

> Are there any new developments to report? If so, we will need to reschedule our conference call as I am now scheduled for hearing at 10 am on Friday. Thanks,
>
> Kim Summers
> Administrative Judge
> Administrative Procedures Division
> Tennessee Department of State
> William R. Snodgras Tennessee Tower
> 312 Rosa L. Parks Ave. North, 8th Floor
> Nashville, TN 37243
>
> (615)253-3887
> FAX (615)741-4472
> email: D.Kim.Summers@tn.gov
> The Mission of the *Office of the Secretary of State* is to exceed the expectations of our customers, the taxpayers, by operating at the highest levels of accuracy, cost-effectiveness, and accountability in a customer-centered environment.
> The information transmitted is intended solely for the individual or entity to which it is addressed and may contain confidential and/or privileged material. Any review, retransmission, dissemination or other use of this information by persons or entities other than the intended recipient is prohibited. If you have received this e-mail in error, please contact the sender and delete the material from any computer. Additionally, please be advised

Within nine minutes after the ALJ sent her email inquiry, Mr. Dunlap promptly

responded that there had been no decision by the federal court either way on the pending motions

and suggested a stay (which the ALJ did not act upon and instead placed the case "in abeyance".

Mr. Dunlap's summary was entirely correct. Mr. Dunlap interpreted the ALJ's decision to delay action in the proceeding, as she had done multiple times as a matter of routine, as an indication that the ALJ was waiting for the federal court to decide the dispositive motions. Additionally, HSDA was fully aware of Mr. Dunlap's opinion (being copied nine minute later and simultaneously to the ALJ. HSDA could challenge Mr. Dunlap's opinion of "no new developments" at any time.

HSDA didn't disclose any "new developments" either until some two months later (January 8, 2014 email change to HSDA's March 7, 2014 when supposed crucial "new developments" were disclosed that Mr. Dunlap was allegedly concealing) when HSDA filed its Motion to Set Hearing. Again, HSDA was a co-party in the pending federal litigation, *Tri-Cities II*, just *like Mr. Dunlap's clients.* But, of course, HSDA commits no wrong, only Mr. Dunlap.

On January 8, 2014, HSDA's General Counsel and presiding attorney, Jim Christoffersen, offered an opinion that, for some two months, turned out to be effectively no different from Mr. Dunlap's. Exhibit 1, Admin. T. R. Vol. 3, p. 233. HSDA's counsel responded on the email string as follows:

> I would say there have been new developments. <u>I will file something explaining</u> <u>them, but it would probably serve little purpose to have a teleconference until</u> <u>then</u>.

Exhibit 1, Admin. T. R. Vol. 3, p. 233. (emphasis added).

By saying "I would say there have been new developments" and "I will file something explaining them…" and "…it would probably serve little purpose to have a teleconference until then." HSDA's counsel reasonably caused Mr. Dunlap to stand down waiting to hear HSDA explain the "new developments" and the admonition that there would be no need to have a telephone conference until I file the explanation of the "new developments." But HSDA's

attorney never filed anything and never "explained" the new developments for some two months, at which time he filed the Motion to Set (and Mr. Dunlap was shortly ejected from the case without notice. Clearly, HSDA did not deem any "new developments" important enough to advise the ALJ for some two months.[11]

In fact, there were no "new developments" as far as Mr. Dunlap could fairly tell (and HSDA apparently agreed for some two months), in so far as the federal court was proceeding , in an apparently prompt and expeditious matter, to make a decision on the various motions which potentially would render the administrative proceeding moot. Why is HSDA not sanctioned by a failure to disclose this supposedly crucial "new developments" for two months? That fact is that

---

[11] HSDA did not, and could not, reasonably qualify its opinion by claiming either lack of knowledge of the status of the federal case or any reliance solely upon Mr. Dunlap for the status of the federal case. To the contrary, in its email, HSDA implicitly (and explicitly) represented to the ALJ and to Mr. Dunlap that it was knowledgeable of the status of the federal case (after all, HSDA was a party to the federal case) and that there were "new developments." But HSDA never offered any important "new developments" that it claimed existed on January 8, 2014 for some two months. Surely HSDA's counsel would have disclosed important "new developments" immediately if there were any that needed to be brought to the ALJ's attention? HSDA didn't because there were none. In addition, isn't it reasonable for Mr. Dunlap to rely on HSDA's counsel saying "I will file something explaining them [the supposed 'new developments'] but it would probably serve little purpose to have a teleconference until then?" (emphasis addedExhibit But the ALJ ejected Mr. Dunlap without notice for what amounted to his completely reasonable reliance on HSDA's representations that it would report any "new developments" and that no purpose would be served to discuss anything until then.

Needless to say, HSDA's attorneys were not mentally incapacitated (or mentally handicapped) so as to be unable to disclose the supposedly vague but crucial "new developments" they somehow perceived in the federal case. If there was somehow some crucial "new development," doesn't HSDA have a duty to the Court to disclose supposedly crucial "new developments?" Is HSDA to be given free rein to compound its fault by claiming there was in fact a "new development" then "concealing it" (apparently along with Mr. Dunlap) for two months? If Mr. Dunlap was somehow concealing the crucial "new development," wasn't HSDA counsel concealing it too? The claim that Mr. Dunlap concealed some material "new development" that somehow slipped by HSDA's counsel for two months is entirely without merit.

HSDA agreed with Mr. Dunlap that there were no significant "new developments" to disclose to the ALJ on January 8, 2014. Presumably, HSDA only filed the Motion to Set containing the alleged "new developments" after its counsel realized that the 180-day rule had been violated some two months later.

In any event, the federal court order merely staying discovery was <u>clearly inconsequential</u> to the administrative proceeding because Plaintiffs' Motion for Summary Judgment and the Defendants' Motions to Dismiss did not rely on any disputed facts on issues. Plaintiffs' motion rested on, for example, Johnson City's and HSDA's blatantly illegal zoning ordinance and notice rule, where there was no factual dispute and similar facially invalid zoning ordinances had been found illegal by federal courts nationwide. Exhibit 1, Admin. T. R. Vol. 2, p. 127. Likewise, the Defendants' Motions to Dismiss did not rely on any disputed issues. So the motions in federal court were poised for prompt decision <u>without discovery</u>. HSDA apparently agreed with Mr. Dunlap because this was never brought to the attention of the ALJ around the January 10, 2014 telephone conference.[12] Moreover, this Court apparently believes that discovery is unnecessary to decide these cases.. See Doc. 205.

---

[12] Any additional time the federal court had given the Defendants to respond to Plaintiffs' Motion for Summary Judgment was, in accordance with its terms, expected to be for a *reasonable time* (i.e., a reasonably *short and most likely very short time*) and, therefore, should not cause unreasonable delay in the consideration of the pending Motion for Summary Judgment and the Motions to Dismiss. HSDA, through its counsel, apparently agreed with Mr. Dunlap and did not mention it at least for another two months. Mr. Dunlap's statement there were "no new developments" was certainly subject to immediate challenge -- HSDA being a party to the federal court action. However, HSDA's counsel, by not articulating any contrary opinion, apparently agreed with Mr. Dunlap and said nothing at the time—at least for another two months when it apparently then realized the 180-day time limit had been violated and filed its Motion to Set.

It's undisputed that ALJ continued the administrative proceeding several times as a matter of routine before the scheduled January 10, 2014 telephone conference with TCH and

The crux of this case is the ALJ's projection of sinister motives of Mr. Dunlap (and presumably TCH's attorney Jim Higgins too—but the in-state attorneys on either side are not sanctioned) to somehow conceal something that already within the personal knowledge of HSDA's attorneys. First, that Mr. Dunlap could somehow pull off a conspiracy of concealment of a dismissed-without-prejudice federal case on the public record – *Tri-Cities I*-- that was expressly mentioned in the *Tri-Cities II* complaint that was served and in the possession and knowledge of HSDA's attorneys. The second ALJ's alleged TCH conspiracy assumes an ability of TCH's counsel to conceal proceedings that HSDA's attorneys personally attended and had direct personal knowledge of all the details of the case.[13]

The ALJ's *sua sponte* allegation of a concealment of a federal stay in deference to the administrative proceeding is completely baseless.

---

HSDA counsel. Exhibit 1, Admin. T. R. Vol. 1, pp. 275, 276, and 277. Any of the inconsequential orders of the federal court – an order suspending discovery that would in no way stop the federal court from deciding the pending motions, and an order giving as little as 30 days additional time for the federal Defendants to respond to Plaintiffs' Motion for Summary Judgment --- did not upset in any way the ALJ's long-past apparent decision to simply wait for the federal court. In that respect there were no "new developments." It is highly unlikely that the ALJ would have, all of a sudden, reversed her previous policy and decided to schedule a full-blown final hearing simply because the federal court had given the Defendants merely an additional thirty days or so to respond to Plaintiffs' Motion for Summary Judgment.

[13] Finally, the ALJ's *sua sponte* allegations of concealment do not bear up to logic. To think that Mr. Dunlap, within nine minutes of receiving the ALJ's email inquiry about "new developments," would somehow hatch a conspiracy of concealment (along with his co-counsel Jim Higgins, a widely-respected Tennessee attorney) and intentionally risk his own 26-year unblemished career on such a far-fetched--and almost certain to fail—conspiracy of concealment, stretches logic to the breaking point. Unfortunately, the ALJ's baseless conspiracy theory unfairly punishes an attorney rightfully attempting to assert his clients' rights under federal law. Allowing the rights to be asserted may well end up saving thousands of Tennesseans' lives. But the ALJ's actions also operate to shred Sup. Ct. Rule 19's notice requirement and severely chill future Tennessee attorneys' attempts to protect the disabled.

The ALJ makes, in her *sua sponte* Order without notice or opportunity for the Mr. Dunlap to dispute it, a finding Mr. Dunlap's concealed to the ALJ that the federal court "was now, itself, subject to a stay in deference to the administrative proceeding."

In fact, the federal case was not and never has been stayed "subject to a stay in deference to the administrative proceeding". The Magistrate's December 20, 2013 Order was on a motion only to stay discovery. Exhibit 1, Admin. T. R. Vol. 2, p. 132) ("The Motion to Stay Discovery, Doc. 100, is GRANTED….". [14]

The Magistrate's January 2, 2014 Order stayed the case specifically to give Defendants more time to respond to Plaintiffs' Motion for Summary Judgment. See *Tri-Cities II*, Doc. 150 The Order giving Defendants additional time to respond was subject to being lifted at "a moment's notice:"

> By motion filed as document 139, the defendants have filed a motion for additional time to respond to the plaintiffs' motion for partial summary judgment. Their motion is GRANTED only to the following extent.

> If the district judge grants the defendants' motion to stay the case, then the defendants' motion for additional time is effectively moot. If, however, the district judge denies the motion to stay the case, the stay of discovery will be lifted as of that moment, [1] and defendants will be allowed thirty days to obtain the discovery they seek and to file their response to the plaintiffs' motion for partial summary judgment.

---

[14] "As a part of the discussion in the Magistrate's Order, the ALJ said, "The fact that *Tri-Cities I* was dismissed "without prejudice" and therefore could be refiled does not alter the fact that it is the law of this case that the plaintiffs must procure, or at least attempt to procure, certain administrative approvals." December 10, 2013 Order [Doc. 135]. But such *dicta* in an order granting a stay in discovery cannot be interpreted to operate as stay of the federal action pending an outcome of the administrative proceeding. TCH respectfully disagrees with the Magistrate's remarks in colloquy that *Tri-Cities II*, having different parties and claims from *Tri-Cities I*, among other reasons, is not subject to any "law of the case" that has never been briefed, argued, or considered by the federal court at that time.

Order, Doc. 150, Case No. 13-305 (E.D. Tenn.), January 2, 2014. Exhibit 1, Admin. T. R. Vol. 2, p. 132.

Therefore, there is not, and never has been, any stay in the federal court "in deference to the administrative proceedings," <u>because it was never stayed on that basis</u>. These orders never stayed the federal court in some kind of suspended mode pending a decision on the administrative appeal. The factual premise is false. Therefore, the ALJ's *sua sponte* finding related to Mr. Dunlap's fraud or concealment of *Tri-Cities I* and an alleged stay of the federal action "in deference to the administrative proceeding" is clearly erroneous.[15]

In her subsequent recusal order, the ALJ <u>completely changes her reasoning</u> as to why she ejected Mr. Dunlap from the case. Exhibit 1, Admin. T. R., Vol. 4, pp. 2-3. In the recusal order, the ALJ abandons her prior allegations of concealment of a "stay," but then provides completely new reasoning that the "relevance of both Tri-Cities I <u>and II [*Tri-Cities Holdings LLC et al. v. Tennessee Health Services and Development Agency et al.*, Case No. 13-cv-305 (E.D. Tenn. 2013)("*Tri-Cities II*")]</u> to these administrative proceedings is the indication from the from the federal courts of its preference for completion of the administrative proceedings prior to commencement of the federal litigation." *Id*. The ALJ finds this "preference for completion" not in any order from the federal court but in *dicta* during colloquy of counsel with Magistrate

_____

[15] Mr. Dunlap did not fail to advise that that the federal court had enacted a stay in deference to the administrative proceeding <u>because that was never the case</u>. Mr. Dunlap did not interpret the statements in the Magistrate's December 10, 2013 Order regarding the administrative proceeding as anything more than *dicta*. TCH respectfully submits that, in any event, this *dicta* would be contrary to federal law that <u>does not require</u> TCH to pursue administrative remedies before filing an ADA Title II action.[15] If this "preference for completion" was so clear and important to eject Mr. Dunlap from the case without notice, why didn't federal co-party HSDA do anything to notify the ALJ of the federal court's position for two months? The fact is, it wasn't.

Judge Inman. Exhibit 1, Admin. T. R., Vol. 3, pp. 251-53. At this time, HSDA's lawyers <u>were in the courtroom with Mr. Dunlap</u> and they never picked up on what the ALJ contends is a critical "preference for completion" either because they never reported it to the ALJ either for approximately two months when HSDA filed its Motion to Set. Surely HSDA's lawyers would have picked up on any material "preference" if one existed. But, of course, they didn't because no discernable "preference" existed – certainly not in any federal court order. But, of course, HSDA commits no offense and only Mr. Dunlap is alleged to be solely at fault in this regard.

So the ALJ's reasoning has changed and now simply failing to disclose a "stay" and, instead, failing to disclose a "preference" indicated by federal Magistrate during in colloquy in a discovery motion hearing. The federal court's alleged remark of a "preference" during colloquy with counsel would be arguably without legal effect (and probably even if set out in an order. Even so, this "preference" was never even included in any federal court order at all.[16] In fact, the federal court <u>never stayed its action in deference to the administrative process</u> and, ultimately, the court <u>did not wait for the administrative appeal process to complete before deciding the motions at issue in the federal case</u>. So apparently there was never was much "preference" to begin with. On April 10, 2014, after the administrative appeal date was set for July, 2014, the district court <u>did not wait</u> and entered orders on TCH's motions for summary judgment and other appealable motions was appealed to the Sixth Circuit.[17]

In addition, the ALJ made wholly new and conclusory findings in her Order on Motion for Reconsideration which were not set forth in the original revocation order (now including *Tri-*

---

[16] At a later date, April 10, 2014, the federal court issued orders dismissing some claims against HSDA, and included in *dicta* its "preference" for the administrative appeal to go forward. But this was long after Mr. Dunlap's *pro hac vice* petition was revoked. [Doc. 163, 164].

[17] *Tri-Cities Holdings LLC et al. v. HSDA et al.*, Case No. 14-5456 (6th Cir. 2014Exhibit

*Cities II* for the first time) and that are unsupported for several reasons.  Exhibit 1,  Admin. T. R. Vol. 1, p. 2-3.   Simply declaring something is "relevant" is meaningless.  How is *Tri-Cities I* relevant?  The ALJ and the Chancery Court never say.  The fact is that *Tri-Cities II* Complaint contains <u>each and every claim TCH set forth in *Tri-Cities I*</u>, plus the additional of claims against HSDA.   It is undisputed that Mr. Dunlap gave the ALJ the complete citation (and several pages of, if not an entire copy of the complaint) to *Tri-Cities II* way back in July, 2013.  If the ALJ had read *the Tri-Cities II* Complaint that she contends is so material to the case – so much so that Mr. Dunlap's career can be harmed by not disclosing it (but, of course, the ALJ finds no duty to disclose on HSDA's lawyers' part) -- she would have read at p. 32 of the *Tri-Cities II* Complaint where it explains that *Tri-Cities I* was "dismissed without prejudice on ripeness grounds."  *TCH et al. v. HSDA et al.*, Case No. 13-cv-305, Doc. 1.

The ALJ alleged that "In denying the Motion for Reconsideration, the ALJ clarified that her action was precipitated specifically and solely by "Petitioner's Objection to Motion to Set Hearing and Demand for Reasonable Modification under the Americans with Disabilities Act," Exhibit 1,  Admin. T. R. Vol. 2, pp. 96-165; Vol. 1, pp. 2-3), and not as a response to Mr. Dunlap's March 12, 2014 letter, since that letter <u>was not considered by the ALJ until it was exhibited to the Motion for Reconsideration</u>. Exhibit 1,  Admin. T. R., Vol. 1, pp. 2-3; Vol. 2, pp. 96-195.   In fact, Mr. Dunlap had emailed the ALJ the March 12, 2014 letter via email and she had presumably read it that day—a work day—and the email was apparently transmitted to HSDA and TCH's co-counsel with the letter attached.  So Mr. Dunlap's lengthy letter March 12,

2014 letter again requesting a reasonable modification was sent to the ALJ before her March 14,

2014 order ejecting Mr. Dunlap from the case and making the criminal extortion allegation. [18]



**James Dunlap**

| | |
|---|---|
| From: | James Dunlap <jim@jamesdunlaplaw.com> |
| Sent: | Wednesday, March 12, 2014 1:25 PM |
| To: | D.Kim Summers (D.Kim.Summers@tn.gov) |
| Cc: | 'Jim Christoffersen'; Rick Piliponis (rdp@hjqginsfirm.com) |
| Subject: | In re Tri-Cities Holdings |
| Attachments: | TCH HSDA Letter to Judge Summers 3.12.14.pdf |

Dear Judge Summers:

Please find a follow-up letter regarding my request for a reasonable modification under the ADA.  Thank you.  Jim.

James A. Dunlap Jr., Esq.
James A. Dunlap Jr. & Associates LLC
310 Windsor Gate Cove NE
Atlanta, Georgia  30342
404-354-2363
404-745-0195 (fax)
jim@jamesdunlaplaw.com

### D.  The ALJ's findings that Mr. Dunlap committed misconduct are clearly erroneous.

#### 1.  The ALJ allegation that Mr. Dunlap concealed that the federal court action "was now, itself, subject to a stay in deference to the administrative proceeding" is clearly erroneous based on fact and law.

Apparently under pressure from TCH's demand that she comply with federal law, the

ALJ entered *sua sponte* order -- without notice or opportunity for TCH's counsel to respond --

------

[18] At some point, around March 14, 2014, it is apparent that ALJ and HSDA realized that the 180-day time limit to conduct a hearing had lapsed.  Only at this point did the ALJ's orders start using the word "stay" and alleging that Mr. Dunlap's requests for "stays" had been granted. Exhibit 1,  Admin. T. R. Vol. 1, p. 2-5.)  In fact, Mr. Dunlap's requests for a "stay" had never been granted.  For the record, TCH did ask for a "stay" in July, 2013 but the ALJ <u>denied</u> the request because she did not issue a "stay" at that time.  The ALJ's September 5, 2013 and November 18, 2013 Orders continued to the hold the matter "in abeyance."  Exhibit 1,  Admin. T. R. Vol. 3, p. 276)("…the hearing in this matter would be held in abeyance…."); Exhibit 1, Admin. T. R. Vol. 3, p. 275)("…the hearing in this matter will continue to be held in abeyance."Exhibit   TCH only asked for another "stay" <u>after</u> the 180-day time limit had expired, but again the ALJ did not act on this request.  No "stay" was ever entered in the administrative appeal until after the 180-day time limit had expired.

including a *sua sponte* finding Mr. Dunlap's concealed to the ALJ that the federal court "was now, itself, subject to a stay in deference to the administrative proceeding." The ALJ further finds that Mr. Dunlap had engaged in such concealment that is, under the right circumstances, worthy of disbarment. Indeed, HSDA was a party to the federal case and could have disclosed this non-existent stay. Yet, only TCH's counsel is punished for failing to disclose this non-existent stay.

In fact, the federal case was not and never had been stayed "subject to a stay in deference to the administrative proceeding". The Magistrate's December 20, 2013 Order was on a motion to stay discovery. Exhibit 1, Admin. T. R. Vol. 2, p. 132) ("The Motion to Stay Discovery, Doc. 100, is GRANTED….". [19] If the ALJ had bothered to ask beyond her extremely vague "any new developments?" email inquiry, Mr. Dunlap would gladly have explained the discovery stay but he didn't think it was worth mentioning. Indeed, HSDA's counsel didn't mention it either.

The federal Magistrate's January 2, 2014 Order stayed the case specifically to give Defendants more time to respond to Plaintiffs' Motion for Summary Judgment. See *Tri-Cities II*, Doc. 150 The Order giving Defendants additional time to respond was subject to being lifted at "a moment's notice:"

> By motion filed as document 139, the defendants have filed <u>a motion for additional time to respond to the plaintiffs' motion for partial summary judgment</u>.

---

[19] "As a part of the discussion in the Magistrate's Order, the ALJ said, "The fact that *Tri-Cities I* was dismissed "without prejudice" and therefore could be refiled does not alter the fact that it is the law of this case that the plaintiffs must procure, or at least attempt to procure, certain administrative approvals." December 10, 2013 Order [Doc. 135]. But such *dicta* in an order granting a <u>stay in discovery</u> cannot be interpreted to operate as stay of the federal action pending an outcome of the administrative proceeding. TCH respectfully disagrees with the Magistrate's remarks in colloquy that *Tri-Cities II*, having different parties and claims from *Tri-Cities I*, among other reasons, is not subject to any "law of the case" that has never been briefed, argued, or considered by the federal court at that time.

Their motion is GRANTED only to the following extent.

> If the district judge grants the defendants' motion to stay the case, then the defendants' motion for additional time is effectively moot. <u>If, however, the district judge denies the motion to stay the case,</u> <u>the stay of discovery will be lifted as of that moment,</u> [1] and defendants will be allowed thirty days to obtain the discovery they seek and to file their response to the plaintiffs' motion for partial summary judgment.

Order, Doc. 150, Case No. 13-305 (E.D. Tenn.), January 2, 2014. Exhibit 1, Admin. T. R. Vol. 2, p. 132.

Therefore, there was not, and never has been, any stay in the federal court "in deference to the administrative proceedings," <u>because it was never stayed on that basis</u>. These orders never stayed the federal court in some kind of suspended mode pending a decision on the administrative appeal. The factual premise is false. Therefore, the ALJ's *sua sponte* finding related to Mr. Dunlap's fraud or concealment of *Tri-Cities I* and an alleged stay of the federal action "in deference to the administrative proceeding" is clearly erroneous.

Indeed, the ALJ never so much as asked TCH's counsel to explain their understanding about the federal court proceeding before ejecting Mr. Dunlap from the case without notice. Tenn. Sup. Ct. Rule 19 exists to prevent just this sort of arbitrary and capricious ejection of counsel.

> **2.     Mr. Dunlap never misled the ALJ when on January 8, 2014 he indicated his good faith opinion was that there were no "new developments" in the case and that he reasonably relied on HSDA counsel's assurances that HSDA would advise shortly on "new developments" that the HSDA counsel perceived at the time.**

TCH disputes that Mr. Dunlap committed misconduct when he responded to the ALJ's January 8, 2014 inquiry "that there were no new developments" because the Motion for Summary Judgment and Motions to Dismiss were still pending in the federal court action (for more than four months at that time.

Mr. Dunlap did not fail to advise that that the federal court was *deferring* to the administrative proceeding underline because that was never the case. Mr. Dunlap did not interpret the statements in the Magistrate's December 10, 2013 Order regarding the administrative proceeding as anything more than *dicta*. TCH respectfully submits that, in any event, this *dicta* would be contrary to federal law that does not require TCH to pursue administrative remedies before filing an ADA Title II action.[20] The fact that federal co-party HSDA did nothing to notify the ALJ of the federal court's "preference" for two months shows this was neither clear nor significant.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law.[21] Evidence should be viewed in the light most favorable to the non-moving party.[22]

In ADA cases, the plaintiff bears the burden of establishing the elements of the prima facie case, including — if needed — "the existence of a reasonable accommodation" that would enable him to participate in the program, service, or activity at issue. *Zukle v. Regents of University of California*, 166 F.3d 1041, 1046 (9th Cir. 1999). The public entity may then rebut this by showing that the requested accommodation would require a fundamental alteration or would produce an undue burden. See 28 C.F.R. § 35.150(a)(3).

## III.     ARGUMENT AND CITATION OF AUTHORITY

---

[20] *Zimmer v. State of Ore. Dept. of Justice*, 170 F.3d 1169, 1177-78 (9th Cir. 1999) (title II incorporates Rehabilitation Act's provisions, including lack of exhaustion requirement); see also *Downs v. Mass. Bay Transp. Auth.*, 13 F. Supp. 2d 130, 134 (D. Mass. 1998) (title II requires no exhaustion requirementExhibit

[21] Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986Exhibit

[22] *Perini Corp. v. Perini Constr.*, Inc., 915 F.2d 121, 124 (4th Cir. 1990).

## A. Defendants failed to provide a reasonable modification to TCH.

Defendants failed to even attempt a reasonable modification to allow TCH to obtain a Certificate of Need to establish an Opiate Treatment Program in Johnson City, TN after being requested to do so in writing by TCH's counsel. See Docs. 15-6, 15-7, 15-11.

## B. Even assuming *arguendo*, that TCH's counsel committed some form of misconduct (an allegation that TCH and its counsel vehemently deny), such alleged misconduct does not entitle Defendants to ignore the ADA.

Federal law is that state court judges must comply Title II of the ADA which includes the duty to provide a reasonable modification.[23] In addition, federal law hold it is not illegal to threaten litigation against a public entity[24]. Therefore, TCH's counsel did nothing wrong.

However, even if TCH's counsel did something wrong, the ADA does not contain a "counsel misconduct" exception that somehow strips a person of rights under the ADA if their counsel commits misconduct. The Defendants must comply with the ADA regardless of any controversy between the ALJ and Plaintiffs' counsel. Not surprisingly, TCH's counsel's ejection from the administrative proceeding was confirmed by Tennessee state courts, but such ejection does not absolve Defendants of their duties under the ADA.

---

[23] *Livingston v. Guice,* 68 F.3d 460 (C.A.4 (N.C.), 1995)(state judges subject to ADA requirements). TCH submits that the ALJ is not even technically a "state court judge." Rather, the ALJ is an employee of a state agency that is not a part of the judicial branch of Tennessee. Therefore, Mr. Dunlap's "threats" of litigation were at all times made against against a state agency (a state employee in her official capacity) which is completely legal and appropriate.

[24] *United States v. Pendergraft*, 297 F.3d 1198, 1208 (11th Cir.2002)(threats to sue a public entity cannot constitute extortion).

**C. The ALJ's allegation that TCH's counsel committed felony criminal extortion after he requested the ALJ provide a reasonable modification constitutes retaliation under the ADA.**

After TCH's counsel made a well-founded request that the ALJ provide TCH a reasonable modification under Title II the ADA, the ALJ alleged (without any notice whatsoever) that TCH's counsel committed criminal extortion. Exhibit 1, Admin. T. R., Vol. 2, pp. 175. ("Mr. Dunlap's coercion and misrepresentation is a flagrant attempt to violate … Tenn. Code Ann. § 39-14-112.". Criminal extortion is a Class D felony and carries a penalty of up to twelve years imprisonment and a $5,000 fine. Tenn. Code Ann. § 40-35-111.[25] To allow an ALJ to lodge criminal extortion charges and threat of imprisonment against an attorney for properly advancing his clients' rights violates the ADA and creates a profound chilling effect, to say the least in this case, and all future ADA cases involving Tennessee administrative agencies. The ADA prohibits retaliation and coercion of any individual because such individual has opposed any act or practice made unlawful under the ADA. See 42 U.S. Code § 12203.[26]

Demanding a reasonable modification under the ADA, and discussing a well-founded potential civil action against a state administrative official if this is not provided, does not constitute criminal extortion. Obviously, Mr. Dunlap never threatened to commit any of the acts described under the Tennessee criminal extortion statute. Thus, any finding that Mr. Dunlap

---

[25] Under Tennessee law, a person commits extortion when using "coercion" upon another person with the intent to: (1) obtain property, services, any advantage or immunity; or (2) restrict unlawfully another's freedom of action.[25] Under Tennessee law, "coercion" means a threat, however communicated, to: (A) Commit any offense; (B) Wrongfully accuse any person of any offense; (C) Expose any person to hatred, contempt or ridicule; (D) Harm the credit or business repute of any person; or (E) Take or withhold action as a public servant or cause a public servant to take or withhold action. Tenn. Code Ann. § Tenn. Code 39-11-106.

[26] 42 U.S. Code § 12203.

committed criminal extortion is without merit.  But this finding of criminal extortion is

symptomatic of the ALJ's rush to judgment without giving Mr. Dunlap a moment to respond.

 The ALJ's finding that Mr. Dunlap actions were "inappropriate" when he respectfully

demanded a reasonable modification under the ADA  by "threatening to sue."  Appendix, p. 15.

Mr. Dunlap was upholding his duty to the tribunal, not violating it.  The ADA becomes a dead

letter if attorneys are summarily ejected from proceedings for asserting rights under it.

### D.  TCH's counsel has a right to fairly comment on the legality of the administrative proceeding in reference to the ADA.

 TCH's counsel believes -- in good faith and certainly grounded in ample federal case law

-- that this affirmative duty entitles TCH to demand and receive an attempt at reasonable

modification by the ALJ, APD, SOS, HSDA, TMHSAS prior to the final CON appeal hearing.[27]

The ADA does not require a claimant to run a gauntlet of administrative appeals before a state

agency must provide a reasonable accommodation.  Ultimately, accuracy of TCH's position

under the ADA will be sorted out in the federal district and appellate courts, but TCH's attorney

should not be punished for raising valid and well-researched concerns under the ADA.  Mr.

Dunlap's making a good faith demand on the tribunal should not subject him to a Stalinist-era-

style excommunication from the proceeding.

 The ALJ appears to take particular umbrage at Mr. Dunlap's allegation that the

administrative appeal process itself "amounts to a scheme or artifice to violate the ADA."

Exhibit 1,  Admin. T. R., Vol. 2, pp. 169. [28] Mr. Dunlap fairly was challenging the whole

---

[27] *Equal Emp't Opportunity Comm'n v. Prod. Fabricators, Inc.*, 763 F.3d 963, 971 (8th Cir. 2014); *Anderson v. City of Blue Ash*, 798 F.3d 338, 360 (6th Cir., 2015)

[28] Unquestionably, this occurs hundreds of times across the United States every year. The U.S. Department of Justice's current ADA enforcement action web page is filled with links

statutory and regulatory scheme to impede and delay services for the diabled.  Not impusing the

integrity of the ALJ.  Challenging state procedures is completely appropriate and in the public

interest under the ADA.  Indeed, challenging illegal state procedures is Mr. Dunlap's duty to

represent his client.  See Tennessee Rules of Professional Conduct, Rule 8 [6].  If challenging

illegal state procedures brands a lawyer a "bully" -- as Mr. Dunlap has been labeled -- how

would the panoply of illegal state procedures in the "Jim Crow" south that were violating another

federal law (the Civil Rights Act) ever have been challenged?  The answer is that they couldn't.

Date:  December 4, 2016.

<div style="margin-left: 3em;">

**s/James A. Dunlap Jr.**
James A. Dunlap Jr., Esq.
James A. Dunlap Jr. & Assoc. LLC
Georgia State Bar No.  003280
4403 Northside Parkway NW Suite 1413
Atlanta, Georgia  30327
404-354-2363
404-745-0195 (fax)
jim@jamesdunlaplaw.com

James S. Higgins, Esq. .  BPR # 16142
The Higgins Firm PLC
525 4th Ave S
Nashville, TN 37210
Phone (615) 353-0930
Fax (615) 467-2443
rdp@higginsfirm.com

Counsel for Plaintiffs

</div>

---

to approximately 100 recently-concluded enforcement actions finding Title II violations by state
agencies.[28]  And that's only the enforcement actions that DOJ brings.  There are probably a
hundred times as many violations of Title II of the ADA every year that are never prosecuted.
The fact is that state agencies honor the ADA "more in the breach" all the time.  Tennessee is not
immune from this tendency.

# CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2016, a copy of the foregoing document(s) was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

Sue A. Sheldon, Esq.
Tennessee Attorney General's Office
P O Box 20207
Nashville, TN 37202

Sara Elizabeth Sedgwick
Tennessee Attorney General's Office
P O Box 20207
Nashville, TN 37202-0207

Kent Erickson Herrin, Esq.
Herrin, Booze & McPeak
515 E Unaka Avenue
Johnson City, TN 37601

Thomas J. Garland , Jr.
Milligan & Coleman PLLP
P O Box 1060
Greeneville, TN 37744-1060

**/s/James A. Dunlap Jr.**
James A. Dunlap Jr., Esq.