UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


| | | |
|---|---|---|
| TRI-CITIES HOLDINGS LLC, JANE DOE NOS. 1-2, | ) | |
| and JOHN DOE NOS. 1-6, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| V. | ) | No. 2:14-CV-233 |
| | ) | |
| TENNESSEE ADMINISTRATIVE PROCEDURES | ) | |
| DIVISION, D. KIM SUMMERS, in her official capacity | ) | |
| as Administrative Law Judge, Tennessee Administrative | ) | |
| Procedures Division, TENNESSEE DEPARTMENT OF | ) | |
| STATE, TRE HARGETT, in his official capacity as | ) | |
| Tennessee Secretary of State, TENNESSEE | ) | |
| DEPARTMENT OF MENTAL HEALTH AND | ) | |
| SUBSTANCE ABUSE SERVICES, and E. DOUGLAS | ) | |
| VARNEY, COMMISSIONER, in his official capacity | ) | |
| as Commissioner of the Tennessee Department of Mental | ) | |
| Health and Substance Abuse Services, | ) | |
| Defendants.[1] | ) | |

MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motion of plaintiffs, Tri-Cities Holdings, LLC

("TCH") and Jane Doe Nos. 1-2, and John Doe Nos. 1-6 ("individual plaintiffs") (referred to

collectively as "plaintiffs") for summary judgment, [Doc. 67]. The defendants have responded,

[Doc. 80], and no reply has been filed. Also pending is the motion of Tennessee Administrative

Procedures Division ("TAPD"), D. Kim Summers ("ALJ Summers") , Tennessee Department of

State ("TDOS"), Tre Hargett, Tennessee Secretary of State ("Hargett"), Tennessee Department

of Mental Health and Substance Abuse Services ("TDMHSAS"), and E. Douglas Varney,

Commissioner of TDMHSAS ("Varney") (referred to collectively as "defendants") for summary

---

[1] Although paragraph 8 of plaintiffs' complaint states that the "action challenges discrimination by H[ealth] S[ervices] [and] D[evelopment] A[gency] and Johnson City," it is clear that no claims are made in this complaint against either Johnson City or THSDA.

judgment, [Doc. 70]. Plaintiffs have responded, [Doc. 73], and defendants have replied, [Doc. 81]. These cross-motions for summary judgment are now ripe for disposition. For the reasons which follow, plaintiffs' motion will be DENIED, defendants' motion will be GRANTED, and the case DISMISSED WITH PREJUDICE.

## I.      Standard of Review

Summary judgment is proper where the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which the finder of fact could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has

the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id*. A genuine issue for trial is not established by evidence that is merely colorable, or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

## II.       Undisputed Facts

This is the third of three lawsuits[2] filed by plaintiffs arising out of TCH's attempt to locate a methadone clinic in Johnson City, Tennessee, and obtain from the Tennessee Health Services and Development Agency ("THSDA") a statutorily required Certificate of Need ("CON"). In their 63-page complaint, plaintiffs seek declaratory and injunctive relief and monetary damages for defendants' alleged violations of the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA") and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 793.

TCH is a Georgia limited liability company which proposed to establish an opioid treatment program ("OTP") (methadone clinic) in Johnson City, Tennessee. The individual plaintiffs are opiate-addicted residents of the Johnson City area and prospective clients of TCH's Johnson City OTP. Tennessee state law requires a CON from the THSDA before an entity can establish certain health care services, including an OTP, in Tennessee, *see* generally Tenn. Code

---

[2]  *See* Nos. 2:13-CV-108 and 2:13-CV-305.

Ann. § 68-11-1601, *et seq.* (The Tennessee Health Services and Planning Act of 2002), consistent with the public policy of the state "that the establishment and modification of health care institutions, facilities and services shall be accomplished in a manner that is orderly, economical and consistent with the effective development of necessary and adequate means of providing for the health care of the people of Tennessee." Tenn. Code Ann. § 68-11-1603. Tennessee law also requires the entity operating an OTP to obtain a license from the TDMHSAS. Tenn. Code Ann. § 33-2-403. As part of the CON process, TDMHSAS is required to conduct an independent review of information submitted to THSDA in the application to "ensure that such information is accurate, complete, comprehensive, timely, and relevant to the decision to be made by the THSDA." Tenn. Code Ann. § 68-11-1614(a) and (b).

TCH filed an application for a CON to establish a non-residential substitution-based treatment center for opiate addiction and the initiation of opiate-addiction treatment at 4 Wesley Court, Johnson City, Tennessee on March 8, 2013. [Doc. 15-2 at 1]. As required by Tennessee Code Annotated § 68-11-1607(c)(3)[3], TCH gave notice of its application to "state, county and local government officials, including State Senator Rusty Crowe, State Representative James

---

[3]  The full statute reads as follows:

> (3) Applications for a Certificate of Need, including simultaneous review applications, shall be filed within five (5) days from the date of publication of the letter of intent. Within ten (10) days of the filing of an application for a non-residential substitution-based treatment center for opiate addiction with the agency, the applicant shall send a notice to the county mayor of the county in which the facility is proposed to be located, the member of the House of Representative and the senator of the General Assembly representing the district in which the facility is proposed to be located, and to the mayor of the municipality, if the facility is proposed to be located within the corporate boundaries of a municipality, by certified mail, return receipt requested, informing such officials that an application for a non-residential methadone treatment facility has been filed with the agency by the applicant. All applications, original and simultaneous review, shall not enter the next review cycle, unless filed with the agency within such time as to assure that such application is deemed complete in accordance with the rules of the agency.

Tenn. Code Ann. § 68-11-1607(c)(3). Although plaintiffs allege in their complaint that § 68-11-1607(c)(3) "is discriminatory and facially invalid under the ADA and the Rehabilitation Act," they seek no relief related to the statute in their complaint in this case.

(Micah) Van Huss, Washington County Mayor Dan Eldridge, and City of Johnson City, City Mayor, Jeff Banys." [Doc. 15-2 at 15; *see* also letter of March 5, 2013, Doc. 15-2 at 122].

While the CON application was pending, TCH filed, on April 1, 2013, the first of the three federal lawsuits related to its efforts to establish its proposed methadone clinic in Johnson City. *See Tri-Cities Holdings, LLC, Jane Doe Nos. 1-2, and John Doe Nos. 1-6 v. The City of Johnson City, Tennessee, Johnson City Board of Commissioners, and the Johnson City Board of Zoning Appeals*, No. 2:13-CV-108 (*Tri-Cities I*"). The plaintiffs sought, among other things, a declaration that Johnson City's zoning ordinance relating to methadone clinics was facially invalid and in violation of the ADA and Rehabilitation Act. [*See* Doc. 1, No. 2:13-CV-108]. Plaintiffs sought a preliminary injunction restraining Johnson City "from withholding the necessary permits and permission from the [sic] TCH for a methadone clinic to be located at 4 Wesley Court, Johnson City, Tennessee." [*See* Doc. 2, No. 2:13-CV-108]. On May 24, 2013, the Court held an all-day evidentiary hearing on the motion for a preliminary injunction. [*See* Docs. 36, 40, 41, 42, No. 2:13-CV-108]. The Court dismissed plaintiffs' complaint without prejudice on June 12, 2013, holding that the matter was not ripe for disposition because TCH did not have, and might never have, a CON from the State of Tennessee. [*See* Doc. 45, No. 2:13-CV-108]. Plaintiffs did not appeal the Court's judgment.

Meanwhile, TCH's application for a CON was proceeding. On June 8, 2013, Mr. Dunlap, TCH's attorney, sent a letter, a copy of which does not appear to be in the record, requesting what Mr. Dunlap characterizes as an "accommodation" under the ADA. On June 11, 2013, TDMHSAS issued its review and analysis as required by Tennessee Code Annotated § 68-11-1608, [Doc. 15-1]. TDMHSAS concluded that it could not "support approval of the application because the majority of the criteria and standards for the type of facility being

proposed in the application have not been met." [*Id*. at 4]. More specifically, TDMHSAS concluded, among other things, that need for the facility "has not been clearly established," and that the "project does not contribute to the overall and orderly development of healthcare" in the region. [*Id*. at 5,6]. THSDA considered the TCH CON application at its monthly meeting on June 26, 2013. [Doc. 31-3].

At the outset of the June 26 hearing, it was noted that the application was opposed by Senator Rusty Crowe, Congressman Phil Roe, the City of Johnson City, various healthcare providers, medical doctors, and private citizens. [*Id*. at 4-5]. An initial statement was made by Jim Christoffersen, THSDA's general counsel, who outlined the general legal and policy bases upon which the agency's decision was to be made, i.e., the statutory criteria of need, economic feasibility, and contribution to the orderly development of healthcare, and Tennessee's state health plan and its "Guidelines for Growth." [*Id*. at 6]. He also noted this Court's holding in *Tri-Cities I* and urged that "the decision not be based on zoning" because the zoning issue had not "been definitely determined." [*Id*. at 8]. Mr. Christoffersen also made the agency aware of a June 18 letter from Mr. Dunlap in which he requested that "the applicant be provided with all reasonable accommodations or modifications to any and all applicable requirements necessary to enable its application to be approved, as required by the ADA and RA," and noted the letter's threat to sue THSDA. [*Id*. at 8-9].

Both opponents and supporters of the application were present for the hearing and were allowed to speak. The opponents included an attorney representing the City of Johnson City, Johnson City's mayor, himself an oral surgeon who treats addicts, and Steven Lloyd, a board-certified internal medicine physician, Associate Dean of Medicine at the Quillen College of Medicine at East Tennessee State University, Associate Chief of Staff at the Mountain Home VA

Medical Center, and a practicing hospitalist. [*Id*. at 10-94]. After extensive questioning and statements by THSDA members, a motion was made to approve the CON application. The motion failed by a 3-6-1 vote. [*Id*. at 196-97].

At the conclusion of the hearing on June 28, Mr. Dunlap addressed the chairman as follows: "On behalf of my individual clients, who, as I would submit to the panel, are disabled, under the Americans With Disabilities Act, I would ask, is there anything that the panel can identify with the application that would enable the CON to go forward and allow my individual clients to be able to receive reasonable access to treatment for their disabilities?" [*Id*. at 197]. Mr. Dunlap was directed to "talk to staff." [*Id*. at 198]. Then, on June 28, 2013, Mr. Dunlap mailed a letter to Melanie M. Hill, Executive Director of THSDA, which he referred to as a follow[ ] up on my letter of June 17, 2013" and stated that he "understood the chairman, at the end of the hearing, to direct him to contact HSDA staff to pursue my request for a reasonable modification or accommodation." [Doc. 15-5 at 1]. Mr. Dunlap stated that "[T]HSDA has not made a reasonable modification of its rules and regulations required under the ADA and RA to allow the CON to be granted," and requested that THSDA modify "one or all of the criteria related to need, economic feasibility, and orderly development . . . and allow the CON application to be approved." The letter requested that this be done by July 5, 2013. [*Id*. at 2-3].

On July 8, 2013, plaintiffs filed their second lawsuit, this time in the Middle District of Tennessee, against THSDA and the same Johnson City defendants as in *Tri-Cities I*, again alleging violations of the ADA and Rehabilitation Act. (*See Tri-Cities Holdings, LLC, et al. v. THSDA, et al*., No. 3:13-CV-669 (M.D. Tenn.), filed as Doc. 1 in No. 2:13-CV-305 in this Court) (*Tri-Cities II*). The case was transferred to this district from the Middle District of Tennessee on November 13, 2013, and has proceeded in this Court as case No. 2:13-CV-305. The complaint

has been amended twice in this Court, first to add Melanie M. Hill in her official capacity as Executive Director of THSDA, as a party defendant, [*see* Doc. 113 in No. 2:13-CV-305], and second to add the individual members of THSDA in their official capacities as party defendants. [*See* Doc. 136 in 2:13-CV-305].  *Tri-Cities II* remains pending in this Court.  TDMHSAS and its commissioner are not sued in No. 2:13-CV-305.

On July 19, 2013, TCH filed an administrative appeal of THSDA's CON decision with the Secretary of State's Administrative Procedures Division ("APD") pursuant to Tennessee Code Annotated § 68-11-610 and the Tennessee Uniform Administrative Procedures Act and the appeal was assigned to ALJ Summers.   On July 25, 2013, Mr. Dunlap mailed a letter to "Department of State Administrative Procedures Division" in which he "ask[ed] your office directly to provide my clients with a reasonable modification of any and all applicable state and local rules and regulations as required under the Americans With Disabilities Act . . .  to allow TCH to operate its Opiate Treatment Program at 4 Wesley Court, or elsewhere, in Johnson City, Tennessee."  [Doc. 15-6].  In the letter, Mr. Dunlap claims that THSDA and Johnson City have both violated the ADA and Rehabilitation Act and stated that he would "be asking the federal court to stay the above-captioned administrative appeal I have filed while the federal case is pending."  He states that '[t]he administrative appeal claims are included in counts 13 and 14 in the federal complaint."  [*Id*. at 3-4].

According to the letter, "[T]HSDA's clearly illegal requirement to notify local politicians when we applied for the clinic provides the lever to engage the federal court to provide equitable relief enforcing issuance of the CON."  [*Id*. at 6].  On July 29, 2013, Mr. Dunlap sent a letter to ALJ Summers in which he moved to stay the "administrative appeal process pending resolution of the federal court action."  (referring to No. 3:13-CV-669 in the United States District Court for

the Middle District of Tennessee) [Doc. 15-7]. The letter concludes that "I am again respectfully asking you, [T]HSDA, and Johnson City to provide a reasonable modification under the ADA and the Rehabilitation Act to allow TCH to locate its OTP clinic in Johnson City." The letter was copied to both the general counsel for THSDA and the city attorney for Johnson City. [*Id.*]. Conference calls between ALJ Summers and the attorneys for the parties in the administrative appeal were held on July 31 and September 5, 2013. During the September 5 conference call, Mr. Dunlap again asked that the proceedings be stayed pending a decision in the federal court which he claimed "would resolve the CON appeal" and "would be very shortly forthcoming." After the September 5 conference call, the request for stay of the administrative proceeding was granted, over the objection of THSDA's counsel. [Doc. 71]. There was another conference call on November 5, 2013, and neither party had anything new to report. [*Id.*].

Meanwhile, *Tri-Cities II* had been docketed as case No. 2:13-CV-305 upon its transfer to this Court from the Middle District of Tennessee. Within days of the transfer, the Johnson City defendants moved for a stay, [Docs. 98, 100, No. 2:13-CV-305], and THSDA filed a motion to dismiss, [Doc. 109, No. 2:13-CV-305]. On December 10, 2013, the parties appeared before Chief United States Magistrate Judge Dennis H. Inman for a hearing on the motions to stay, [Doc. 133, No. 2:13-CV-305]. Defendants sought the stay on the basis that *Tri-Cities II* had been filed by plaintiffs in the Middle District of Tennessee in defiance of this Court's prior ruling in *Tri-Cities I* that the matters were not ripe for disposition because the plaintiffs had not received a CON and license from the State of Tennessee. [Doc. 137 at 4-5, No. 2:13-CV-305]. Mr. Dunlap, representing plaintiffs, candidly indicated to the magistrate judge that plaintiffs disagreed with the earlier ripeness decision and suggested to the magistrate judge that the case should proceed because the CON application was on administrative appeal and had then been

stayed for approximately 60-days "waiting for a direction from the Federal Court in this case." [*Id*. at 11-13]. The magistrate judge expressed some consternation that the administrative appeal had been stayed at the request of Mr. Dunlap and ultimately entered an order finding plaintiffs' explanation for filing their suit in the Middle District of Tennessee to be "rather obvious judge-shopping" and "if not a sanctionable contempt, certainly manifested a contemptuous attitude toward this Court's earlier decision."[Doc. 135, No. 2:13-CV-305 at 4]. The magistrate judge further found that "plaintiffs' counsel has been more than a bit loose with his interpretation of what occurred while this case was pending before the Middle District of Tennessee," and his arguments tread [ ] "perilously close to being offensive." [*Id*.]. The magistrate judge held that the ruling of the Court in *Tri-Cities I* was binding on plaintiffs and that "it is the law of this case that the plaintiffs must procure, or at least attempt to procure, certain administrative approvals." [*Id*. at 5]. The magistrate judge noted that it was "reasonable to conclude that the district judge will not change his opinion that plaintiffs must attempt to procure a Certificate of Need, and a license from the Tennessee Health Services Agency, before this Court can entertain their suit." The magistrate judge further noted that:

> Plaintiffs' application for a certificate of need has been denied, and an appeal of that denial is now pending before a state administrative law judge. During argument, the court was quite surprised to learn that an administrative law judge has delayed considering the appeal of that denial based upon plaintiffs' counsel's representation to her that he intended to ask this court to stay, i.e., enjoin, any action by her. That would seem to be contrary to plaintiffs' professed need for a quick resolution to this litigation.

[*Id*. at 6]. Plaintiffs' motion to stay was therefore denied. [*Id*.]. Plaintiffs did not appeal the magistrate judge's order pursuant to Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1)(A).

Another conference call had been scheduled with the administrative law judge for January 10, 2014. On January 8, 2014, an e-mail inquiry was sent by the ALJ to counsel for the parties concerning any further developments in the federal litigation. Mr. Dunlap responded that there were no new developments, despite the above described developments before the Magistrate Judge just a month earlier, and that the motion for summary judgment and the motion to dismiss were still pending. On March 7, 2014, Mr. Christoffersen filed a motion on behalf of THSDA asking that a hearing be scheduled on the administrative appeal and attached to the motion was a copy of the December 10, 2013 order issued by Judge Inman. [*See* Doc. 31-5]. On March 10, 2014, Mr. Dunlap responded to THSDA's motion, once again objecting to any hearing on the administrative appeal prior to the resolution of the federal court litigation. Mr. Dunlap once again requested "a reasonable modification to allow the CON to be issued." He further stated that "this tribunal's continuing failure to do this creates a cause of action that Petitioner may bring against [ALJ Summers]," and indicated that if a hearing was scheduled on the administrative appeal, "petitioner <u>respectfully</u> indicates that it will have no choice but to join Your Honor, in an official capacity, and this tribunal, as defendants in the pending federal court action." [Doc. 15-10 at 4] (underlining in original). Mr. Dunlap's 21-page filing in the administrative action made no mention of the developments in the federal litigation. On March 12, 2014, Mr. Dunlap sent another letter to ALJ Summers "to outline further [his] position regarding the previous requests" and to request "a conference . . . to *specifically to address the reasonable request modification request*—before a full-blown hearing is scheduled." [Doc. 15-11] (emphasis in original).

On March 14, 2014, ALJ Summers entered an order in the administrative appeal *sua sponte* revoking Mr. Dunlap's permission to appear *pro hac vice* in the administrative matter. In

her order, ALJ Summers referenced Mr. Dunlap's lack of disclosure of matters related to the federal court action, noted his "threats" to join the administrative law judge and the THSDA in the federal court action should the stay of the administrative proceedings be lifted and the CON appeal set for hearing, noted his demands that THSDA "grant the requested modifications of [T]HSDA rules and the disputed CON even though the [T]HSDA's obligation to provide this relief is yet to be determined, either by this tribunal or in the federal courts," and found that Mr. Dunlap's actions in the administrative case violated various Tennessee Rules of Professional Conduct, had expressed his contempt for the administrative proceedings in the tribunal, and had "unnecessarily impeded a resolution of the CON appeal." [Doc. 15-12]. On March 24, 2014, Mr. Dunlap sought reconsideration of the order revoking permission to appear *pro hac vice* and moved for ALJ Summers's recusal. On April 2, 2014, ALJ Summers denied both motions. [Doc. 15-14].

On May 1, 2014, TCH appealed the order revoking permission to appear *pro hac vice* to the Chancery Court for Davidson County, Tennessee. On December 10, 2014, the Chancery Court upheld ALJ Summers's revocation of counsel's admission *pro hac vice*, concluding, among other things:

> Without evidence and compelling legal authority, Mr. Dunlap stated that ALJ Summers retaliated against him for advising her (a) that she was subject to the ADA and (b) that she bore certain responsibilities under the ADA. . . His conduct, his lack of candor with ALJ Summers, and his misrepresentation of his duplicative federal court filings went beyond "forceful prose . . ."[4]
>
> . . . .

---

[4]  Mr. Dunlap described his statements to ALJ Summers as "forceful prose" and maintained that they were not intended as disrespectful.

. . . His [Mr. Dunlap's] description of his own conduct as a zealous assertion of his client's ADA rights is grossly inaccurate and is more aptly described as duplicitous and bullying.

. . . .

Mr. Dunlap's statements to ALJ Summers were untrue. Judge Greer had ruled that his client had to exhaust its administrative remedies. Mr. Dunlap did not like that ruling . . . . Mr. Dunlap provided no information about the status of the federal litigation.  Rather, Mr. Dunlap chose not to reveal the federal court ruling and to intentionally assert a legal position directly contrary to that federal court decision.

. . . .

ALJ Summer's conclusion that Mr. Dunlap misrepresented the status of the federal litigation and used the misrepresentation to attempt to coerce a decision from her in his client's favor without an administrative hearing is supported by the record . . .

. . . .

Mr. Dunlap argued that he had the right to fairly comment on the legality of the administrative proceedings in reference to the ADA. His right to comment is not in dispute; rather, the dispute centers on his failure to be forthcoming and candid with ALJ Summers about the federal court proceedings . . . . Similarly, his posturing that his client has the right to make HSDA aware of imminent federal enforcement action serves only as a distraction, not an effective explanation for his misrepresentations or attempt to coerce . . .

. . . .

. . . Mr. Dunlap characterizes his conduct as an appropriate attempt to discuss the ADA. However, his written statements were not attempts to make ALJ Summers aware of the federal law and its implications. Instead, he declared that "if" ALJ Summers took action, he would have no choice but to sue her in federal court. This language is not a discussion of federal law, but a direct challenge to ALJ Summers' authority . . .

. . . .

Despite being advised by the federal judge and the federal magistrate that he needed to exhaust his administrative remedies, Mr. Dunlap repeatedly demanded that a CON issue without a hearing and asserted that ALJ Summers' failure to issue one forthwith constituted a violation of federal law. His actions were tantamount to harassment and an attempt to intimidate ALJ Summers . . .

. . . .

No lawyer is entitled to use threats and intimidation to force a judge to perform a discretionary act and such conduct evinces a persistent resolve to undermine and to bend the justice system to that lawyer's will. *Galbreath v. Bd. of Prof'l Responsibility*, 221 S.W.3d 660, 666-667 (Tenn. 2003 ). In so doing, the lawyer has inflicted grievous injury upon the judicial process. *Id.* Counsel for HDCA is correct that Mr. Dunlap's charges of bias and retaliation on the part of ALJ Summers and his subsequent act of suing her in federal court "go far beyond the use of unwise semantics or mere harsh language directed toward the tribunal." His conduct, e.g., misleading ALJ Summers, threating to sue her and joining her in the federal litigation, caused unwarranted delays in the administrative hearing and disrupted the orderly administration of justice. Mr. Dunlap took all of these actions without a sound basis in law, and certainly, without a foundation in fact. ALJ Summers had substantial and material evidence to revoke Mr. Dunlap's *pro hac vice* admission.

[Doc. 51 at 18, 19, 21-22, 22, 23, 24, 26, 27]. The Davidson County Chancery Court's judgment was appealed to the Tennessee Court of Appeals, which issued its judgment and opinion on February 22, 2016, affirming the Chancery Court's judgment. *See Tri-Cities Holdings, LLC v. Tennessee Health Services and Development Agency*, No. M2015-00058-COA-R3-CV, 2016 WL 721067 (Tenn. Ct. App. Feb. 22, 2016). The Tennessee Supreme Court denied TCH's application for permission to appeal on June 23, 2016. [Doc. 58].

TCH thereafter moved to dismiss its administrative appeal because it was unable to renew its option to lease the premises at 4 Wesley Court, Johnson City, Tennessee and could find no other location for the clinic. [Attachment 2 to Declaration of James B. Christoffersen]. ALJ

Stovall then dismissed the administrative appeal with prejudice. [Attachment 4 to Christoffersen Declaration].

## III.    Analysis

Plaintiffs' claims are set out in eight counts in the complaint filed in this case. In Counts 1 and 2, plaintiffs assert claims under the Rehabilitation Act (Count 1) and Title II of the ADA (Count 2) against ALJ Summers, TDOS and TAPD for failure to make reasonable modification. In Counts 3 and 4, plaintiffs assert claims under the Rehabilitation Act (Count 3) and Title II of the ADA (Count 4) for TDMHSAS's failure to make reasonable modification. In Counts 5 and 6, plaintiffs assert claims under the Rehabilitation Act against ALJ Summers, TDOS and TAPD for retaliation against TCH.[5] In Count 7, plaintiffs assert claims under Title II of the ADA against ALJ Summers, TDOS and TAPD for retaliation against TCH. In Count 8, plaintiffs assert claims under the federal and state due process clauses against ALJ Summers, TDOS and TAPD.

Plaintiffs seek summary judgment on their reasonable modification and retaliation claims set forth in Counts 1 through 7 of the complaint. The defendants seek summary judgment as to all counts. Plaintiffs do not address their due process clause claim in Count 8 and defendants address it only in a footnote. According to defendants, "should Plaintiffs choose to pursue such claims, they will be subject to many, if not all, of the defenses described above, and defendants assert that they will be entitled to summary judgment thereupon." [Doc. 71 at 19 fn. 8].

### A.    Reasonable Accommodation

---

[5]    The title given by plaintiffs to Counts 5 and 6 is the same. The body of Count 5, paragraph 260-264, suggests that plaintiffs intended a retaliation claim against TDMHSAS. Either way, the outcome is the same.

Both the ADA[6] and the Rehabilitation Act[7] prohibit discrimination against individuals with disabilities[8] by public entities. *See* 42 U.S.C. § 12182(b)(2)(A)(ii) (prohibiting discrimination by "fail[ing] to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.); 28 CFR § 35.130(b)(7) (same).

Three inquiries are made with respect to a requested accommodation: (1) Whether the modification requested was reasonable, (2) whether it was necessary for the disabled individual, and (3) whether it would fundamentally alter the nature of the program or activity. *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 682-83 (2001). An ADA plaintiff "bears the initial burden of proposing an accommodation and showing that that accommodation is objectively reasonable."[9] *Kleiber v. Honda of Am. Mfg., Inc*., 485 F.3d 862, 870 (6th Cir. 2007) (quoting *Hedrick v. W. Reserve Care Sys. and Forum Health*, 335 F.3d 445, 457 (6th Cir. 2004)).

"[A]n accommodation is reasonable unless it requires 'a fundamental alteration in the nature of a program' or imposes 'undue financial and administrative burdens.'" *Smith & Lee Assoc. v. City of Taylor*, 102 F.3d 781, 795 (6th Cir) (quoting *Southeastern Cmty. College v. Davis*, 442 U.S. 397, 410, 412 (1979)). The Supreme Court has indicated that, "in most cases," determining whether an accommodation is "reasonable" will require the district court "to

---

[6] The Court will refer only to the ADA in its analysis "inasmuch as both acts are interpreted consistently with one another." *MX Group, Inc. v. City of Covington*, 293 F.3d 326 (6th Cir. 2002).

[7] The Rehabilitation Act does not contain an explicit accommodation requirement. *See Wisconsin Cmty. Servs. v. City of Milwaukee*, 465 F.3d 737, 746 (7th Cir. 2006). Its implementing regulations, however, do set forth such a requirement. *See* 28 CFR § 41.53.

[8] It is not disputed by the parties in this case that drug addicted individuals are disabled under the ADA. *See MX Group*, 293 F.3d at 336-42.

[9] Plaintiffs appear to disagree with this and repeatedly refer the state's duty under the ADA as "affirmative." In his letter to ALJ Summers on March 12, 2014, Mr. Dunlap states that "it is not incumbent on me to take the initiative to fashion a remedy. Rather, it is your duty." [Doc. 15-11 at 2]. Plaintiffs offer no authority to support this position.

conduct an individualized inquiry and make appropriate findings of fact." *School Board of Nassau County v. Arline*, 480 U.S. 273, 287 (1987). "In cases involving waiver of applicable rules and regulations, the overall focus should be on 'whether waiver of the rule in the particular case would be so at odds with the purposes behind the rule that it would be a fundamental and unreasonable change.'" *Jones v. City of Monroe*, 341 F.3d 474, 480 (6th Cir. 2003) (quoting *Dadian v. Village of Wilmette*, 269 F.3d 831, 838-39 (7th Cir. 2001)). The burden of proving that an accommodation is not reasonable lies with the public entity. *Id.*

In the present case, plaintiffs have made several requests for what they see as a "reasonable" accommodation,[10] each of which had as its objective a grant of TCH's CON without having to pursue it administratively or through the state courts, and whether consistent or not with Tennessee's state health plan.[11] In other words, however phrased, the only accommodation plaintiffs view as reasonable in this case is an outright grant of the CON.[12] Plaintiffs claim they have made a request for reasonable accommodation of the defendants on the following occasions: (1) On June 8, 2013, Mr. Dunlap sent a letter requesting what Mr. Dunlap characterizes as an "accommodation" under the ADA (not in record); (2) on or about June 17, 2013, TCH and the individual plaintiffs requested by letter that THSDA provide TCH with a reasonable modification of THSDA rules "to allow the granting of TCH's CON application," [Doc. 1 at ¶ 190]; (3) at the conclusion of the CON hearing, plaintiffs requested that THSDA

_____

[10] Plaintiffs' memorandum refers to the requests as "multiple well-founded and carefully-crafted requests for a reasonable modification," [Doc. 68 at 5], but offer no other analysis of their requests. Mr. Dunlap describes his belief that TCH was entitled to a CON without a hearing as a "good faith" belief. [Doc. 68 at 9].

[11] Plaintiffs assert that "[i]t is undisputed that the [defendants] failed to provide TCH with a reasonable modification as required under the ADA to allow the CON to be issued." [Doc. 68 at 4]. It is undisputed that the CON was not issued, but plaintiffs do not address the "reasonableness" of their requests. TCH, through its attorney, Mr. Dunlap, has approached the case, as well as the others filed, with the attitude that TCH is entitled to the CON and location of its OTP in Johnson City just because TCH "says" it is entitled to do so. As a result, plaintiffs' filings with the Court have lacked basic legal analysis which would have been helpful to the Court.

[12] Mr. Dunlap's letter to Commissioner Varney could arguably be construed as a request that he change the recommendations and conclusions of TDMHSAS without any showing that they are factually incorrect or motivated by some discriminatory intent. In any event, the ultimate modification requested was "to allow TCH to locate its Opiate Treatment Program" in Johnson City. [See Doc. 15-15 at 14].

17

provide TCH with a reasonable accommodation "to allow the granting of TCH's CON application," [*Id.* at ¶ 191]; (4) on June 28, 2013 plaintiffs requested by letter that THSDA provide TCH with a reasonable modification of THSDA rules "to allow the granting of TCH's CON application," [*Id.* at ¶ 192]; (5) on July 28, 2013, July 29, 2013, March 12, 2014, and March 14, 2014, TCH made a formal request to TAPD, TDOS and ALJ Summers for a reasonable modification "to allow it to open an OTP in Johnson City," [*Id.* at ¶ 206]; and (6) on April 7, 2014, TCH made a formal request in writing to Commissioner Varney, TDMHSAS, for a reasonable modification "to allow TCH to obtain a Certificate of Need and allow it to establish an opiate treatment program (OTP) in Johnson City."

The purpose of the CON requirement in Tennessee is set out at Tennessee Code Annotated § 68-11-1603 where it is declared "to be the public policy of this state that the establishment and modification of health care institutions, facilities and services shall be accomplished in a manner that is orderly, economical and consistent with the effective development of necessary and adequate means of providing for the health care of the people of Tennessee." The Court agrees with the state defendants that the "modification" requested by the plaintiffs is objectively unreasonable and would result in a fundamental alteration of the Tennessee CON program. Plaintiffs' demand for a "blanket exception" from the requirements of the Tennessee program "would be so at odds with the purpose behind the rule that it would be a fundamental and unreasonable change." *Jones*, 341 F.3d at 480. In fact, plaintiffs have offered no legal authority or case law support for their very broad theory of this case, which seems to go something like this: "I am disabled or seek to provide a covered health service to the disabled; therefore, I should be automatically exempt from all statutory and regulatory criteria, i.e., need, economic feasibility, and orderly development, for the issuance of a CON." Such an approach

would not only undermine the purposes of the Tennessee Health Services and Planning Act, it would destroy it altogether. Under plaintiffs' theory, any hospital, nursing home, surgical center, and like facility that provides health services to any disabled person would become automatically approved for a CON and, in effect, be totally exempt from the requirements of the Planning Act. Neither the ADA nor the Rehabilitation Act require such a result. The defendants' motion for summary judgment on the reasonable accommodation claims is GRANTED.[13]

## B.    Retaliation

Counts 5 (Summers/APD/DOS), 6 (Summers/APD/DOS) and 7 (Summers/APD/DOS) claim retaliation against TCH in violation of the ADA and Rehabilitation Act. TCH alleges that its attorney, Mr. Dunlap, simply "demand[ed] a reasonable modification under the ADA, and discuss[ed] a well-founded potential civil action against a state administrative official if this is not provided" and was ejected from the administrative litigation through the revocation of his *pro hac vice* status and accused of criminal conduct, i.e. extortion, in retaliation. The state defendants respond, however, that Mr. Dunlap's *pro hac vice* revocation was a direct result of attorney misconduct, and that TCH is bound by the final rulings of the state courts on the issue.

The framework of *McDonald Douglas v. Green*, 411 U.S. 792 (1976) governs claims of retaliation based on circumstantial evidence.[14]  A *prima facie* case of retaliation requires a showing that (1) the plaintiff engaged in activity protected under the ADA; (2) the public entity knew of that activity; (3) the public entity took an adverse action against the plaintiff; and (4) there was a causal connection between protected activity and the adverse action. *A.C. v. Shelby Cnty. Bd. Of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013). "Protected activity typically refers to

---

[13]    It is of note that THSDA, the only agency with statutory authority to actually grant the CON, is not a party defendant in this case. See Tenn. Code Ann. § 68-11-1605. It is also noteworthy that plaintiffs use forty-three (43) pages of their complaint to state the same allegations against THSDA as they have stated in Tri-Cities II.
[14]    TCH does not argue that it has offered direct evidence of actionable retaliation.

action taken to protect or oppose a statutorily prohibited discrimination." *Rorrer v. City of Stow*, 743 F.3d 1025 (6th Cir. 2014) (quoting *Goonan v. Fed. Reserve Bank of New York*, 916 F. Supp.2d 470, 484-85 (S. D. N.Y. 2013)).

If the plaintiffs establish a prima facie case, "the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. The defendant bears only the burden of production; the burden of persuasion remains with the plaintiffs at all times." *Weigel v. Baptist Hosp. of E. Tennessee*, 302 F.3d 367, 377-78 (6th Cir. 2002). If the defendant articulates such a reason, the plaintiff may then show that the defendant's stated reason "is merely a pretext for discrimination." *Id*. at 378. "A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). The plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendant's] explanation and infer that the defendant[ ] . . . did not honestly believe in the proffered nondiscriminatory reason . . ." *Braithwaite v. Timken Co*., 258 F.3d 488, 493-94 (6th Cir. 2001) (internal quotations and citations omitted).

Mr. Dunlap, a lawyer licensed to practice in the state of Georgia, was granted *pro hac vice* admission by ALJ Summers in the administrative appeal of the denial by THSDA of the CON application of TCH. On March 14, 2014, ALJ Summers *sua sponte* revoked Mr. Dunlap's *pro hac vice* admission, finding:

## CONCLUSIONS OF LAW

1. From the outset, Mr. Dunlap requested a stay of this administrative proceeding on behalf of Tri-Cities until after the related federal court action was resolved. He never disclosed to this tribunal that the federal litigation had previously been

dismissed for lack of ripeness or that it was now, itself, subject to a stay in deference to the administrative proceedings.

2. Notwithstanding the recent indication from the federal court that the CON appeal should be resolved before the federal issues are addressed, Mr. Dunlap still insists that the stay of these proceedings should remain in place, and has threatened to join the Administrative Judge and this tribunal in the federal court action should the stay of the administrative proceedings be lifted and the CON appeal be set for hearing.

3. In addition, Mr. Dunlap is now demanding that this tribunal grant the requested modifications of [T]HSDA rules and the disputed CON even though the [T]HSDA's obligation to provide this relief is yet to be determined, either by this tribunal or in the federal courts. Mr. Dunlap's demand includes an unveiled threat that the Administrative Judge and the tribunal will face an ADA enforcement action by the Department of Justice should the Administrative Judge fail to provide the requested relief.

4. Mr. Dunlap has misrepresented to this tribunal the status of the federal litigation and has used this misrepresentation to attempt to coerce a decision by this tribunal in favor of his client without the benefit of the administrative hearing, which he demands must remain stayed.

5. Mr. Dunlap's coercion and misrepresentations are a flagrant attempt to improperly influence a judge in violation of Rules 3.3 3.5 and 8.4 of the Tennessee Rules of Professional Conduct, as well as Tenn. Code Ann.§ 39-14-112.

6. Mr. Dunlap has expressed contempt for this tribunal and these administrative proceedings, thus, there is no apparent purpose for his continued participation.

7. Mr. Dunlap's actions have unnecessarily impeded a resolution of the CON appeal and have breached the conditions on which he was granted *pro hac vice* admission to practice law in Tennessee. In accordance with Rule 19(c), Mr. Dunlap's permission to appear in this matter *pro hac vice* is appropriately and necessarily revoked.

[Doc. 15-12 at 9-10].

The ALJ's revocation order was appealed to the Davidson County Chancery Court, which affirmed the ALJ's order in full except for the finding that Mr. Dunlap had violated Tennessee Code Annotated § 39-14-112, and then to the Tennessee Court of Appeals. In an opinion issued on February 22, 2016, the Court of Appeals affirmed the Chancery Court

judgment, finding that the evidence supported the finding that Mr. Dunlap had breached the conditions on which he was granted *pro hac vice* admission. *Tri-Cities Holdings, LLC v. Tennessee Health Services and Development Agency*, 2016 WL 721067 (Tenn. Ct. App. 2016). Finding the ALJ's factual findings "supported by substantial and material evidence," the Court of Appeals "agree[d] that Mr. Dunlap's conduct did not comply with Tennessee Supreme Court Rule 8, Rules of Professional Conduct 3.3[15] [prohibiting false statement of fact or law to tribunal by lawyer], 3.5[16] [prohibiting a lawyer from seeking to influence a judge], and 8.4[17] [professional misconduct], rendering revocation of his *pro hac vice* status appropriate." *Id*. at 8, 10. The Tennessee Supreme Court denied TCH's application for permission to appeal on June 23, 2016, rendering the ALJ's order final. [Doc. 58].

A plaintiff proves the fourth element of his or her *prima facie* case, the causal connection between the protected activity and the adverse action, by producing evidence sufficient to raise

---

[15] Rule 3.3. Candor Toward the Tribunal
  (a) A lawyer shall not knowingly:
  (1) make a false statement of fact or law to a tribunal; ...
  Tenn. Sup.Ct. R. 8, RPC 3.3.

[16] Rule 3.5. Impartiality and Decorum of the Tribunal
  A lawyer shall not:
  (a) seek to influence a judge, juror, prospective juror, or other official by means prohibited by law; ...
  Tenn. Sup.Ct. R. 8, RPC 3.5.

[17] Rule 8.4. Misconduct
  It is professional misconduct for a lawyer to:
  (a)  violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
  (b)  commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects;
  (c)  engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;
  (d)  engage in conduct that is prejudicial to the administration of justice;
  (e)  state or imply an ability to influence a tribunal or a governmental agency or official on grounds unrelated to the merits of, or the procedures governing, the matter under consideration;
  (f)  knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law; or
  (g)  knowingly fail to comply with a final court order entered in a proceeding in which the lawyer is a party, unless the lawyer is unable to comply with the order or is seeking in good faith to determine the validity, scope, meaning, or application of the law upon which the order is based.
  Tenn. Sup.Ct. R. 8, RPC 8.4.

the inference that the protected activity was the likely reason for the adverse action. *Walborn v. Erie County Care Facility*, 150 F.3d 584, 589 (6th Cir. 1998). The causal connection is strengthened if the defendant's retaliation action occurred soon after the plaintiff's protected activity. *Smith v. Ameritech*, 129 F. 3d 857, 865-66 (6th Cir. 1997). The Sixth Circuit, however, has stated that, in retaliation cases, temporal proximity alone is insufficient to establish plaintiff's *prima facie* case. *Harrison v. Metro. Gov't of Nashville*, 80 F.3d 1107, 1109 (6th Cir. 1996).

A defendant is entitled to summary judgment on a claim of unlawful retaliation when he can show that "he would have taken the same action in the absence of the protected activity." *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999) (*en banc*) (plurality op.). *See also Thomas v. Eby*, 481 F.3d 434, 442 (6th Cir. 2007) (citing *Thaddeus-X*); *Cameron v. Grainger County*, 274 Fed. App'x 437, 440 (6th Cir. 2008). Defendants Summers, Hargett, and the Administrative Procedures Division of the Office of the Secretary of State argue that plaintiffs are now "precluded from asserting that defendant Summers revoked TCH attorney Dunlap's *pro hac vice* privilege in retaliation for Mr. Dunlap's demand for a reasonable accommodation under the ADA or Rehabilitation Act." [Doc. 71 at 16]. Defendants further argue that it is conclusively established, as a result of the state court proceedings, that it was Mr. Dunlap's misconduct, i.e. violation of Supreme Court Rule 8, RPC 3.3, 3.5 and 8.4, that led to revocation of his *pro hac vice* privilege and TCH cannot relitigate "that now-settled issue," citing the doctrine of issue preclusion. [*Id.*].

The Sixth Circuit recently set out a succinct statement of the doctrine of issue preclusion in this circuit:

> . . . [I]ssue preclusion, often referred to as collateral estoppel, "precludes relitigation of issues of fact or law actually litigated and decided in a prior action between the same parties and necessary to the judgment, even if decided as part of a different claim or cause

of action." *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 661 (6th Cir. 1990). Four requirements must be met before issue preclusion applies:

> (1) The precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Cobbins v. Tenn. Dep't of Transp.*, 566 F.3d 582, 589-90 (6th Cir. 2009) (citing *N.A.A.C.P., Detroit Branch v. Detroit Police Officers Assn.*, 821 F.2d 328, 330 (6th Cir. 1987)).

*Georgia-Pacific Consumer Products LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012); s*ee also Stryker Corp. v. National Union Fire Ins. Co.*, 681 F.3d 819, 824-25 (6th Cir. 2012).

It appears that only the first requirement for issue preclusion is at issue here. Defendants argue the precise issue raised in plaintiffs' instant complaint, i.e., whether ALJ Summers retaliated against TCH by revoking Mr. Dunlap's *pro hac vice* privilege after he demanded that she grant TCH's CON application, [18] without the formalities required in an administrative appeal, was raised in the administrative proceedings, decided against TCH, and affirmed by the Davidson County Chancery Court and the Tennessee Court of Appeals. In that litigation, according to defendants, it was preclusively established that Dunlap's *pro hac vice* status was revoked because of his misconduct, not in retaliation for rights asserted under the ADA.

TCH only partially responds to the argument made by the defendants. Inexplicably, TCH's memorandum in opposition to defendants' motion focuses only on the finding made by ALJ Summers that Mr. Dunlap's conduct was a violation of Tennessee Code Annotated § 39-14-

---

[18]  Plaintiffs never explain how ALJ Summers could have granted such a request in light of her lack of statutory authority to do so.

112 (extortion), [Doc. 73 at 22-24]. That finding was not affirmed by the Davidson County Chancery Court and, therefore, not considered by the Court of Appeals. TCH totally ignores, however, the clear findings of the ALJ of serious misconduct on the part of Mr. Dunlap which go far beyond the single finding by the ALJ that Mr. Dunlap was guilty of extortion. Although he makes a conclusory argument that the "ALJ's ejection . . . was without basis," [*id*. at 23], he will not now be permitted to relitigate that issue, since he has had a full and fair opportunity to litigate it in the prior state proceedings and those proceedings have now resulted in a final judgment against TCH on the merits. The Court therefore agrees with the defendants that TCH is bound by the state court's ruling that Mr. Dunlap's *pro hac vice* privilege was revoked, not in retaliation "for properly advancing his clients' rights under the ADA," [*id*. at 22][19], but rather "for his violation of rules of professional conduct." [Doc. 71 at 17].

Even if the Court did not give preclusive effect to the state court judgment, defendants would still be entitled to summary judgment on TCH's rehabilitation claims. Although there is some temporal connection between Mr. Dunlap's letters demanding that the CON be granted and revocation of his *pro hac vice* privileges, TCH makes no other effort to show that there was a causal connection between the protected activity, i.e., the request that the CON be granted, and the adverse action, i.e., the revocation of Mr. Dunlap's *pro hac vice* privilege. TCH argues only in conclusory fashion that ALJ Summers's order "makes a panoply of baseless allegations and findings against Mr. Dunlap (including felony extortion carrying a 12-year prison sentence)." [Doc. 68 at 5]. Mr. Dunlap splits hairs, shifts blame, is willfully blind to the obvious, and uses inflammatory language, all in an apparent attempt to mask his own misconduct. He will not be

---

[19]   The Court certainly does not fault any attorney for aggressively advancing his client's rights, but he must do so within the bounds of the law and the rules of professional conduct. Mr. Dunlap's lack of candor both in this Court and in the administrative proceeding call into question his commitment to appropriate rules of professional conduct.

allowed to do so.  Whether or not he was guilty of felony extortion,[20] that argument misses the point.  Mr. Dunlap was clearly less than candid with the administrative tribunal, misrepresented various matters, and tried to obstruct the orderly progression of the administrative appeal.   In addition, the ALJ's order did not leave TCH without competent counsel to represent it in the administrative proceeding.[21]

### C.      Count 8:  Claims Under Federal and State Due Process Clauses

In Count 8 of plaintiffs' complaint, they appear to assert a claim under the federal and state due process clauses, arguing that Summers, TAPD, and TDOS have denied TCH "the CON it rightfully deserves and has expended time and financial resources, has lost the opportunity to conduct its business and provide a much-needed service at the proposed location, and expended additional attorney's fees."  [Doc. 1 at ¶ 277].  Further, the complaint alleges that the individual plaintiffs have likewise been deprived of due process by "having to drive thousands of additional miles and expend hundreds of additional hours of drive time to receive MMT treatment at distant OTP clinics."  [*Id*. at 279].  As noted above, neither party fully addresses Count 8.

Both the United States Constitution and the Constitution of Tennessee contain substantially similar limitations on the power of government entities to deprive persons of their life, liberty, and property.  Section 1 of the Fourteenth Amendment provides, in part, that a state shall not "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV, § 1.  Article I, § 8 of the Constitution of Tennessee states that "No man shall be . . . disseized of his freehold, liberties or privileges, or . . . deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."  TENN. CONST. , art. I, § 8.

---

[20]    Plaintiffs do argue in their memorandum that the ALJ's "allegation that TCH's counsel committed felony criminal extortion" [Doc. 68 at 25] (emphasis added),  somehow constituted illegal retaliation.  That claim does not appear to be asserted in the complaint.  In any event, the record clearly establishes that Mr. Dunlap was guilty of other misconduct, a fact he conveniently overlooks.
[21]    In light of this, the Court might question whether any adverse action was actually taken against TCH.

Tennessee courts have repeatedly stated that the procedural due process protections in both provisions are essentially the same. *See Bailey v. Blount County Bd. of Ed.*, 303 S.W. 3d 216, 230 (Tenn. 2010); *see also Whitehouse v. Whitley*, 979 S.W. 2d 262, 269 (Tenn. 1998). Due process does not require all the structural safeguards in administrative and civil judicatory proceedings that are generally expected in criminal proceedings. *Hayne v. Metropolitan Nashville Bd. of Public Ed.*, 380 S.W. 3d 715, 735 (Tenn. 2012) (citing *2 Richard J. Pierce, Jr., Administrative Law Treatise*, § 9.9, at 679 (4th ed. 2002)). It is unclear to the Court whether plaintiffs assert a procedural due process claim or a substantive due process claim.[22] A plaintiff states a procedural due process claim through one of two methods:

> "(1) [by] demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a 'random and unauthorized act' *and* that available state remedies would not adequately compensate for the loss."

*Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991) (emphasis in original) (quoting *Collins v. Nagle*, 892 F.2d 489, 497 (6th Cir. 1989)). Under the first method, the plaintiff would have to allege and prove that the fundamental elements of procedural due process—notice[23] and an opportunity to be heard—were absent from the process itself. *See Yellow Freight Systems, Inc. v. Martin*, 954 F.2d 353, 357 (6th Cir. 1992). Under the second method, a plaintiff must allege and prove that available state remedies would not adequately compensate for the loss. *See*

---

[22] It is likely that the proper vehicle for bringing a due process claim against these defendants is under 42 U.S.C. § 1983, not under the ADA or Rehabilitation Act. *See Elkins v. Summit County, Ohio*, 2008 WL 614805, at * 8 n. 2 (N.D. Ohio Nov. 5, 2008).

[23] TCH does make the claim, in its memorandum in opposition to the defendants' motion for summary judgment, that "[t]he ALJ declared (without any notice whatsoever) that TCH's counsel committed criminal extortion. [Doc. 73 at 22]. It is not clear whether that refers to plaintiffs' due process claim. In any event, TCH raised the same issue, i.e., lack of notice, in the Tennessee Court of Appeals, which rejected the claim stating that "the notice . . . was appropriate inasmuch as Mr. Dunlap was fully advised of the basis of the revocation and had the opportunity to—and did—include any concern relative to notice in his motion for reconsideration, which was fully considered by the ALJ." *Tri-Cities Holdings*, 2616 WL 721067, at * 11.

*Parratt v. Taylor*, 451 U.S. 527, 543 (1981) (rejecting a procedural due process claim where there was no contention that the procedures themselves were inadequate), *overruled* on other grounds by *Daniels v. Williams*, 474 U.S. 327 (1986). To state a claim for a substantive due process violation, a plaintiff must establish that (1) a constitutionally protected property or liberty interest exists, and (2) that constitutionally protected interest has been deprived through arbitrary and capricious action. *See Silver v. Franklin Township, Bd. Of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992) ("To establish a violation of substantive due process, a plaintiff must first establish the existence of a constitutionally-protected property or liberty interest.").

Defendants have moved for summary judgment on all counts, even though they discuss Count 8 only in a footnote in their memorandum. A movant for summary judgment is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Id.* at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F.Supp. 1, 4 (S.D. Ohio, 1992). Given the plaintiffs' failure to respond to defendants' motion for summary judgment as to Count 8, it arguably should be granted on the basis of plaintiffs' failure to point out specific facts in the record which create a genuine issue of material fact.

To the extent, however, that a grant summary judgment at this point on Count 8 could be viewed as a *sua sponte* grant of summary judgment, the Court hereby gives notice of its intent to grant summary judgment as to Count 8 unless the plaintiffs show cause, not later than fourteen (14) days from the date of the entry of this memorandum and order, as to why summary judgment should not be granted. Defendants will then have ten (10) days to respond to plaintiffs' filing, if any. *See Kistner v. Califano*, 579 F.2d 1004 (6th Cir. 1978) (It is the clearly established rule that a district court must afford the party against whom *sua sponte* summary judgment is to be entered ten-days notice and an adequate opportunity to respond). Plaintiffs are given notice that their failure to show cause will result in summary dismissal of Count 8 of their complaint.

**CONCLUSION**

For the reasons set forth above, defendants' motion for summary judgment, [Doc 70], as to all counts except for Count 8, is GRANTED. Plaintiffs' motion for summary judgment, [Doc. 67], is DENIED. As to Count 8, the Court will await plaintiffs' response to the Court's show cause order.

So ordered.

ENTER:


_____
    s/J. RONNIE GREER
   UNITED STATES DISTRICT JUDGE